STATE of Wisconsin EX REL. John S. BERGMANN, Petitioner-Appellant,

v.

Gail FAUST, Respondent-Respondent.

Court of Appeals

No. 98–2537. *Submitted on briefs February 26, 1999.—Decided March 25, 1999.*

(Also reported in 595 N.W.2d 75.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John S. Bergmann*, pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general,and *Karen E. Timberlake*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J. John Bergmann appeals a trial court order dismissing his petition for a writ of mandamus to compel Gail Faust, custodian of records for the Wisconsin Parole Commission, to release certain documents contained in his parole file. Bergmann also appeals the trial court's order directing the institution in which he is confined to immediately deduct $120, the amount of the filing fee, which had originally been waived, from his account and forward it to the clerk of courts. Finally, Bergmann contends the trial court erroneously determined that his action was frivolous and filed for an improper purpose.

We conclude the trial court correctly granted summary judgment dismissing the petition because, based on the undisputed facts, Faust properly determined that the public interest in protecting individuals who supplied information to the parole commission about Bergmann outweighed the public interest in disclosing the requested documents. We also conclude the trial court erred in ordering the institution to deduct the entire $120 filing fee, rather than limiting the amount to that in Bergmann's account on the date the judgment was rendered, as provided in § 814.29(3), STATS., 1995–96.[1] For reasons we explain in the opinion, we do not decide whether the court erroneously determined this action to be frivolous or filed for an improper purpose. We therefore affirm in part, reverse in part and remand with directions.

## BACKGROUND

The petition for a writ of mandamus alleges that on June 3, 1997, Bergmann made a written request of

---

[1] Except as otherwise indicated, all references to statutes are to the 1997–98 edition of the Wisconsin Statutes.

John Husz, chairman of the parole commission, for "any and all 'confidential' letters possessed by you against my being paroled." By letter dated June 10, 1997, Faust responded and denied the request, explaining:

> This agency is charged with two missions by the legislature and the people of the State of Wisconsin. First, it is charged with the duty of holding and attempting to rehabilitate convicted felons such as yourself. Second, it is further charged with the duty to protect the public. This denial is made pursuant to our obligation to protect the public.

> You have a criminal history of brutally beating a woman and threatening her life. You forced her to enter your car at gunpoint. You stole money from her wallet while you thought she was unconscious. You threatened her life if she reported your assaults to the police.

> State law recognizes an important state interest in protecting citizens from bodily assault and threats of death; proof of that interest is found in the criminal code and on your judgment of conviction. While not directly on point, proof is also found in sec. 19.36(8), Stats., which the legislature enacted after a member of the public was killed when people on whom he informed learned his identity. Section PAC 1.06(3)(d),[2] Wis. Adm. Code, an administrative

---

[2] WISCONSIN ADM. CODE § PAC 1.06(3)(d) provides that inmates shall have access to the documentary information considered by the commissioners, with the exception of "information that has been obtained under an assurance of confidentiality or submitted to the commission with the expectation that the information would be held confidential." As to this information, the commission is to make a decision whether to deny access "on a case-by-case basis, weighing the

code provision approved by the legislature, also demonstrates that there is a significant interest in protecting the safety of people who have been victims or witnesses from the retaliation of people like yourself who have demonstrated an easy ability to inflict grave bodily injury on others. These public interests, in the open record context, far outweigh the public's interest in you seeing this record.

(Footnote added.) The petition seeks an order directing Faust to comply with Bergmann's request pursuant to § 19.35, STATS., which provides for inspection of records in the custody of certain government or government-related entities under certain conditions. *See* §§ 19.32–19.35, STATS.[3] Based on Bergmann's filing of an affidavit of indigency, the court entered an order permitting the action to proceed without payment of the filing fee of $120 and other costs.

Faust's return to the petition admitted the allegations concerning Bergmann's request and Faust's response, denied the other allegations, and asserted affirmative defenses. Accompanying the return was a sealed copy of the requested documents for the court's in camera inspection and a copy of the parole commission's decision dated June 4, 1997, denying Bergmann parole. The decision stated that Bergmann had sent a threatening letter to Chairman Husz dated April 17, 1997, and had "again refused anger mgt [management] today," and that the "threatening letter to Chairman

---

potential harm to the inmate against the harm that may be done to the public interest by disclosure." *Id.*

[3] One of the conditions is that the requestee of the records may not be an incarcerated person "unless the person requests inspection or copies of a record that contains specific references to that person or his or her minor children. . . ." Section 19.32(3), STATS.

Husz and his refusal to complete anger mgt makes his risk extremely high based on his offenses and his position of innocence."

Faust moved for summary judgment relying on the parole commission's action and the documents submitted for in camera inspection. In opposition to the motion, Bergmann submitted an affidavit in which he averred that the only two persons he could think of who would assert they would be fearful of their safety if he were released were the woman who alleged she was the victim of the offense for which he was convicted and the mother of his child. He accused the former of lying under the direction of the district attorney and being responsible for wasting his life, but denied he had any ill will toward her. He accused the latter of "retaliating against [him] for the severe discomfort I caused her over her being the lying and unfaithful slut she decided to be," and he stated he had "sued [her] for libel and slander," but "never threatened [her] life or physical well-being. . . ."

The trial court determined there were no disputed issues of fact and Faust was entitled to judgment as a matter of law. The court stated that Faust had undertaken the required public interest balancing test, and her conclusion that the public's interest in nondisclosure outweighed the public's interest in disclosure was supported by a clear and persuasive explanation. The court observed that Faust's conclusion was supported by the material the court had reviewed in camera and by Bergmann's expression of anger toward his victim, his ex-wife, the court system and Faust in his numerous filings. The court considered Bergmann's arguments and decided they had no merit.

The court also decided:

> Because of petitioner's inappropriate use of the courts as a forum for his rantings, and his failure in this lawsuit to raise any legitimate objections to the denial of his Open Records request, petitioner should not have the benefit of a waiver of filing fees in this action.

Relying on § 814.29(3)(b), STATS., 1995–96,[4] the court then ordered the institution in which Bergmann was confined to deduct the sum of $120 from his inmate account and forward it to the Dane County Clerk of Courts for payment of the filing fee.

The court's decision and order was dated May 15, 1998. In response to Bergmann's motion for reconsideration and motion to "suspend collection of filing fees until after appeal," the court entered an order denying both motions on the ground that good cause was shown for neither, and entered a separate order, dated July 1, 1998, directing the institution to "immediately deduct" the sum of $120 from Bergmann's account and forward it to the clerk of court "pursuant to § 814.29(3)(b)."

Two weeks later, Bergmann filed a motion requesting a return of $69.82 from the $120 the institution had sent to the clerk of court from his account.[5] He

---

[4] Section 814.29(3)(b), STATS., 1995–96, provided:

> If the affiant is a prisoner, as defined in s. 46.011 (2), or a person confined in a federal correctional institution located in this state, a request for leave to commence or defend an action, proceeding, writ of error or appeal without being required to pay fees or costs or to give security for costs constitutes consent as provided in par. (a), and, if the judgment is in favor of the opposing party, constitutes consent for the court to order the institution to deduct the unpaid fees and costs, including attorney fees listed in par. (a), from the amount in the inmate's account at the time the judgment was rendered.

[5] Bergmann filed other post-judgment motions that were denied by the court and are not relevant to this appeal.

asserted that § 814.29(3)(b), STATS., 1995–96, permits the deduction from the inmate's account only from "the amount in the inmate's account at the time judgment was entered," and that at the end of business on May 15, 1998, there was only $50.18 in his regular prison account. The trial court denied this motion and Bergmann's motion for reconsideration on this issue. Bergmann appeals the May 15, 1998 decision and order as well as the subsequent orders.

## DISCUSSION

*Open Records Request*

Bergmann contends the trial court erroneously granted summary judgment in Faust's favor because the documents he requested were not obtained in the manner required in order to constitute "confidential" records, and because he should have been provided the documents with the author's or authors' identity concealed.

When we review a summary judgment, we apply the same methodology as the trial court, and we consider the issues de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The remedy is appropriate in cases where there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984).

The general presumption when we apply the open records law is that public records shall be open to the public unless there is a clear statutory exception, a

limitation under the common law, or an overriding public interest in keeping the public record confidential. *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 156, 469 N.W.2d 638, 643 (1991). This case presents issues concerning the third basis for overcoming the presumption.

When we review a denial of access to public records that is based on a weighing of public interest considerations, we follow this method of analysis:

> First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release.

*Id.* at 157, 469 N.W.2d at 643. The question of whether harm to the public interest from the denial of inspection outweighs the public interest in favor of inspection is a question of law, which this court reviews independently. *Id.* at 165, 469 N.W.2d at 646. Although our review is de novo, we benefit from the trial court's thorough and thoughtful analysis.

Bergmann does not argue the trial court erred in deciding that Faust responded to his request with the requisite specificity, and we conclude that she did so respond. We therefore focus on the second step in the analysis—whether the stated reasons are sufficient to permit withholding. Bergmann relies on *Mayfair* in his argument that in order for the documents to be with-

held, they must have been obtained in a particular manner. In *Mayfair*, the Department of Revenue declined to provide the requesting company with certain documents concerning the company on the ground that they were obtained under a pledge of confidentiality to the informant. *Id.* at 151, 469 N.W.2d at 641. The court concluded that the record supported the trial court's determination that release of the documents would divulge the name of the confidential informant. *Id.* at 164, 469 N.W.2d at 646. The court also concluded that where criminal or noncriminal law enforcement interests are at stake, the interest in preserving the confidentiality of an informant who was given a pledge of confidentiality by a government agency may, on balance, outweigh the public interest in having access to the portions of the records that could identify the informant, and that it did so in that case. *Id.* at 167, 171, 469 N.W.2d at 647–48, 649.

Faust's denial here is not premised on DOC's interest in maintaining a pledge of confidentiality given as a condition for obtaining information, but rather on the interest in protecting the safety of persons who have provided information. *Mayfair* addressed only the former, not the latter. Indeed, the *Mayfair* court specifically noted that the interest in maintaining the integrity of the government's pledge of confidentiality was not dependent on whether a breach of that pledge would cause the informant to suffer adverse consequence. *Id.* at 167 n.6, 469 N.W.2d at 648. *Mayfair* does not limit the government's interest in protecting the safety of informants to only those informants who received an express pledge of confidentiality as a condition for disclosing information.

We have previously recognized that protecting the safety of individuals may, under certain circum-

stances, outweigh the public interest in access to records. In *State ex rel. Morke v. Record Custodian*, 159 Wis. 2d 722, 726, 465 N.W.2d 235, 236 (Ct. App. 1990), we decided that the interest in the safety and well-being of the staff of a correctional institution and their families outweighed the public interest in disclosure of the names, home addresses, and published telephone numbers of all institutional employees to a recently released inmate. In *Law Offices of Pangman & Assoc. v. Stigler*, 161 Wis. 2d 828, 840, 468 N.W.2d 784, 789 (Ct. App. 1991), we decided the interest of the safety of a police officer who had worked undercover outweighed the public interest in the disclosure of certain documents from the officer's personnel records. We recognized this as a separate and even more compelling basis than the public policy grounds exempting certain personnel records expressed in § 19.85(1)(c) and (f), STATS.[6] *Id.* at 840–41, 468 N.W.2d at 789; *see also Klein v. Wisconsin Resource Center*, 218 Wis. 2d 487, 496–97, 582 N.W.2d 44, 48 (Ct. App. 1998) (considering the concern for safety and well-being of Wisconsin Resource Center (WRC) staff and families as a factor in upholding denial of disclosure of WRC employee personnel records to WRC patient).

The public interest in protecting individuals from harm resulting from disclosure of records is expressed in the statutory exception pertaining to law enforcement informants in § 19.36(8), STATS., which was

---

[6] Section 19.35(1)(a), STATS., provides in pertinent part:

The exemptions to the requirement of a governmental body to meet in open session under s. 19.85, are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

enacted subsequent to *Mayfair*.[7] That section mandates an authority to delete the portion of a record identifying a law enforcement informant before providing the record; if no portion can be copied or inspected without identifying the informant, the authority must withhold the record unless the custodian makes a determination that the public interest in allowing the inspection outweighs the harm done to the public inter-

[7] Section 19.36(8), STATS., enacted by 1993 Wis. Act 93, provides:

(8) IDENTITIES OF LAW ENFORCEMENT INFORMANTS. (a) In this subsection:

1. "Informant" means an individual who requests confidentiality from a law enforcement agency in conjunction with providing information to that agency or, pursuant to an express promise of confidentiality by a law enforcement agency or under circumstances in which a promise of confidentiality would reasonably be implied, provides information to a law enforcement agency or, is working with a law enforcement agency to obtain information, related in any case to any of the following:

a. Another person who the individual or the law enforcement agency suspects has violated, is violating or will violate a federal law, a law of any state or an ordinance of any local government.

b. Past, present or future activities that the individual or law enforcement agency believes may violate a federal law, a law of any state or an ordinance of any local government.

2. "Law enforcement agency" has the meaning given in s. 165.83 (1) (b), and includes the department of corrections.

(b) If an authority that is a law enforcement agency receives a request to inspect or copy a record or portion of a record under s. 19.35 (1) (a) that contains specific information including but not limited to a name, address, telephone number, voice recording or handwriting sample which, if disclosed, would identify an informant, the authority shall delete the portion of the record in which the information is contained or, if no portion of the record can be inspected or copied without identifying the informant, shall withhold the record unless the legal custodian of the record, designated under s. 19.33, makes a determination, at the time that the request is made, that the public interest in allowing a person to inspect, copy or receive a copy of such identifying information outweighs the harm done to the public interest by providing such access.

285

est by providing access. Section 19.36(8)(b). An informant includes not only an individual who has provided information to a law enforcement agency pursuant to an express promise of confidentiality, but also an individual who has provided information "under circumstances in which a promise of confidentiality would reasonably be implied." Section 19.36(8)(a)1. While not directly applicable to this case, § 19.36(8) indicates that protecting the reasonable expectations of confidentiality of one who has provided information to the government, even though there is no express promise of confidentiality, is an appropriate consideration to weigh against disclosure.

Also instructive is the exception in § 19.35(1)(am)2.a, STATS., for a record containing "personally identifiable information that, if disclosed, would . . . [e]ndanger an individual's life and safety."[8] Neither party argues that § 19.35(1)(am) is applicable

---

[8] Section 19.35(1)(am)2, STATS., provides:

(am) In addition to any right under par. (a), any requester who is an individual or person authorized by the individual, has a right to inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority and to make or receive a copy of any such information. The right to inspect or copy a record under this paragraph does not apply to any of the following:

. . . .

2. Any record containing personally identifiable information that, if disclosed, would do any of the following:
 a. Endanger an individual's life or safety.
 b. Identify a confidential informant.
 c. Endanger the security of any state correctional institution, as defined in s. 301.01 (4), jail, as defined in s. 165.85 (2) (bg), secured correctional facility, as defined in s. 938.02 (15m), secured child caring institution, as defined in s. 938.02 (15g), mental health institute, as defined in s. 51.01 (12), center for the developmentally disabled, as defined in s. 51.01 (3), or the population or staff of any of these institutions, facilities or jails.

to Bergmann's request, and we therefore do not address its applicability. Nevertheless, we consider this exception for individual safety to be relevant as an indication of public policy.

In addition, the statute governing the parole commission supports the conclusion that protection of an individual supplying the commission information about an inmate is an appropriate factor for the agency to weigh in considering a request for those records, whether or not the individual has been given an express promise of confidentiality. The commission is charged with considering discretionary parole for eligible inmates of adult correctional institutions under the control of the DOC. *See* §§ 304.01(2) and 304.06(1)(b), STATS. The functions of discretionary parole are: to assure that early release will not depreciate the seriousness of the offense; to determine that optimum benefit has been derived by the inmate from institutional programs; to assess the risk to the community of early release; and to determine in each individual case that there is a reasonable certainty of a crime-free reintegration of the inmate into society. WISCONSIN ADM. CODE § PAC 1.04.

Obtaining complete information in order to evaluate these factors for each individual is crucial to the commission's ability to carry out its statutory functions. Paragraphs (c), (d) and (e) of § 304.06(1), STATS., demonstrate the legislature's recognition of this fact: they require the commission to make a reasonable attempt to notify the court, district attorney and victim or victim's family so those persons can submit written statements, and the commission is expressly author-

---

d. Compromise the rehabilitation of a person in the custody of the department of corrections or detained in a jail or facility identified in subd. 2. c.

287

ized to consider other statements or information it receives. Section 304.06(1)(e). Persons who fear retaliation for providing information will not be likely to do so if they are not protected from the potential harm of public disclosure. Indeed, the protection of a victim who provides information is expressly addressed in § 304.06(1)(f), which provides that "[a]ll commission records or portions of records that relate to the mailing addresses [of victims and family members] are not subject to inspection or copying under s. 19.35(1)," and the mailing addresses of those persons must be "obliterate[d]" before being made part of the record.

We hold that protecting persons who supply information or opinions about an inmate to the parole commission from harassment, retaliation or other harm is a public interest that may, on balance, outweigh the public interest in having access to documents that could identify those persons. We have inspected the documents that the trial court inspected in camera. We conclude that the trial court's determination that the requested documents implicate the interest of protecting such persons is supported by the record. We also conclude, based on our independent review, that the record of Bergmann's past conduct, his statements in this action, and the documents inspected in camera, demonstrate a need to protect persons whom he might perceive as negatively affecting the parole decision, and who are subject to threats or acts of retaliation by him. We are satisfied that need to protect outweighs any public interest in disclosing the requested documents.[9]

---

[9]Bergmann argues in his reply brief, as he did before the trial court, that withholding the records violates his constitutional rights with respect to the denial of parole. We do not

Alternatively, Bergmann argues the documents should be disclosed to him after the portions that identify the authors are deleted, arguing by analogy to § 19.36(8)(b), STATS.[10] Bergmann overlooks the fact that this section requires that the custodian not disclose *any* of the record if no portion can be inspected without identifying the informant. Section 19.36(8)(b).[11] Our independent review persuades us that the need to protect particular individuals from Bergmann requires withholding the documents in their entirety.

---

generally consider issues that are raised only in the reply brief, not in appellant's main brief. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 (Ct. App. 1981). Moreover, this action is not a review of the decision denying him parole, but rather a review of Faust's denial of his request under the open records law. We therefore do not address Bergmann's constitutional arguments.

[10] This argument is disingenuous. Bergmann asserts that he wants these documents because he believes they are written by "one or two women from [his] past who have their personal vengeances [sic] to bring upon him," and he wants to contest the allegations that, he believes, adversely affected his parole determination. The obvious question is: how can he contest allegations about what he did or did not do with respect to particular women, without knowing who they are? Nonetheless, we address this argument on its merits.

[11] We observe that even without specific statutory authorization, when only a portion of a document is not subject to disclosure, the court has the authority to delete or obliterate that portion before granting inspection. *See State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 683, 137 N.W.2d 470, 475 (1965).

*Filing Fee*

Bergmann contends he is entitled to reimbursement of $69.82 because, under § 814.29(3)(b), STATS., 1995–96, the court could order payment of no greater amount than that in his account on May 15, 1998.[12] The State responds that § 814.29(3), 1995–96, did not limit the amount the court may order to be deducted. It also argues that under WIS. ADM. CODE § DOC 309.49(4)(e), funds in an inmate's account may be used to satisfy claims reduced to judgment, thus permitting the funds in Bergmann's account to be used to pay the amount ordered by the court.

The issue presented is one of statutory construction. This is a question of law, which we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond the statutory language to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* at 406, 565 N.W.2d at 510. However, a statute is not rendered ambiguous merely because the parties disagree as to its meaning. *Id.*

Section 814.29(1)(a), STATS.,1995–96, permitted a person to commence an action without paying any service or filing fee based upon a finding and order of the

---

[12] Section 814.29, STATS., was amended by 1997 Wis. Act 133, §§ 34–36 as it relates to actions filed by prisoners, effective September 1, 1998.

court that, because of poverty, the person was unable to pay the costs of the action or the proceeding. Subsection (2) authorized the court to "later require the payment of, or the giving of security for, costs, fees and service if the court determines that the person no longer meets any of the requirements under subsec. (1)." Paragraph (3)(b) provided:

> (b) If the affiant is a prisoner, as defined in s. 46.011 (2), or a person confined in a federal correctional institution located in this state, a request for leave to commence or defend an action, proceeding, writ of error or appeal without being required to pay fees or costs or to give security for costs constitutes consent as provided in par. (a), and, if the judgment is in favor of the opposing party, constitutes consent for the court to order the institution to deduct the unpaid fees and costs, including attorney fees listed in par. (a), from the amount in the inmate's account at the time the judgment was rendered.

The trial court in this case did enter an order finding Bergmann indigent and permitting him to file this action without paying the service or filing fees. It did not subsequently determine that Bergmann no longer met the indigency requirements. Both the court's order entered May 15, 1998, and its order entered July 1, 1998, directed the institution in which Bergmann is incarcerated to deduct $120 from his account and send it to the Dane County Clerk of Courts for payment of the filing fee.

We conclude that the relevant language in §814.29, STATS., 1995–96, is not ambiguous: when a trial court has determined that a prisoner is indigent and entered an order waiving fees and costs, unless it subsequently determines that the person no longer meets the indigency requirements, it may order pay-

ment of the unpaid fees and costs only pursuant to para. (3)(b). Under the plain language of this paragraph, the court may order the institution to deduct the unpaid fees and costs from the amount in the inmate's account "at the time the judgment was rendered." There is no authority in § 814.29, 1995–96, for the trial court to order the institution to send the clerk of courts the full amount of the filing fee, without regard to the amount in the inmate's account at the time the judgment was rendered.

The Department of Correction's administrative rule to which the State refers is, on its face, plainly inapplicable. WISCONSIN ADM. CODE § DOC 309.48 establishes the procedure "for inmate requests for disbursement of general account funds." WISCONSIN ADM. CODE § DOC 309.49 establishes criteria to be applied by the institution in responding to those requests. WISCONSIN ADM. CODE § DOC 309.49(4)(e) provides that disbursements in excess of a specified amount may be authorized "[t]o pay creditors' claims acknowledged in writing by the inmate and claims reduced to judgment. Such disbursements require approval by the superintendent. If necessary, the claims may be verified." The procedures and criteria established in WIS. ADM. CODE §§ DOC 309.48 and 309.49 relate to requests by the inmate for disbursement from his or her general account funds. It has no application to this situation, where Bergmann is not requesting a withdrawal from his account. This regulation cannot reasonably be interpreted to increase a court's authority beyond that specified in § 814.29(3)(b), STATS., 1995–96.

Bergmann asserts that the "time the judgment was rendered" was May 15, 1998, the date on which the

court both rendered and entered[13] the decision and order in which it directed the institution to deduct the sum of $120 from Bergmann's inmate account. Bergmann attached materials to his motion for reimbursement indicating that the amount in his account on that date was $50.18.[14] The order denying this motion did not explain the denial or make any findings. The State does not argue that, if we interpret the statute as Bergmann contends, we may not accept Bergmann's submission as evidence of what was in his account on May 15, 1998. Nor does the State argue that we should use July 1, 1998, or any date other than May 15, 1998, as the date on which "judgment was rendered." (July 1, 1998, was the date on which the court rendered and entered a separate order directing the institution to deduct $120 from Bergmann's account.) Finally, the State does not dispute Bergmann's assertion that $120 was deducted and sent to the clerk of courts pursuant to the trial court's order. We consider the State's failure to dispute Bergmann's positions on these points to be concessions. *See State ex rel. Sahagian v. Young*, 141 Wis. 2d 495, 500, 415 N.W.2d 568, 570 (Ct. App. 1987).

We therefore conclude that the court's authority under § 814.29(3)(b), STATS., 1995–96, was limited to entering an order directing the institution to deduct

---

[13] A judgment is rendered on the date it is signed by the judge or by the clerk at the judge's written direction and entered when it is filed in the office of the clerk of court. Section 806.06(1)(a) and (b), STATS.

[14] He attached a copy of an "information request" form with a signature of "Bergmann" asking, "What was my regular acct. balance on 5–15–98?", and an initialed response stating "at end of day 5/15/98 it was $50.18."

from Bergmann's general account on May 15, 1998, an amount of $120, or whatever lesser amount was in the account on that date. Since the institution deducted and sent to the clerk of court $69.82 more than it would have sent had the court entered the order authorized by § 814.29(3)(b), 1995–96, we direct the trial court to order the clerk of court to return that amount to the institution in which Bergmann is incarcerated to be deposited in Bergmann's general account.

*Frivolousness, Improper Purpose*

Bergmann argues that the trial court erroneously determined that his action was frivolous and filed for an improper purpose. He does not want that determination to be counted against him for purposes of § 801.02(7)(d), STATS., which provides:

> (d) If the prisoner seeks leave to proceed without giving security for costs or without the payment of any service or fee under s. 814.29, the court shall dismiss any action or special proceeding, including a petition for a common law writ of certiorari, commenced by any prisoner if that prisoner has, on 3 or more prior occasions, while he or she was incarcerated, imprisoned, confined or detained in a jail or prison, brought an appeal, writ of error, action or special proceeding, including a petition for a common law writ of certiorari, that was dismissed by a state or federal court for any of the reasons listed in s. 802.05(3)(b)1. to 4.[15] The court may permit a pris-

---

[15] Section 802.05(3), STATS., enacted by 1997 Wis. Act 133, § 14, provides:

(a) A court shall review the initial pleading as soon as practicable after the action or special proceeding is filed with the court if the action or special proceeding is commenced by a prisoner, as defined in s. 801.02 (7) (a) 2.

oner to commence the action or special proceeding, notwithstanding this paragraph, if the court determines that the prisoner is in imminent danger of serious physical injury.

*Id.* (footnote added). This was enacted by 1997 Wis. Act 133, § 12 and applies to "civil actions, special proceedings, injunctions and petitions for a common law writ of certiorari pending on the effective date," which was September 1, 1998. 1997 Wis. Act. 133, §§ 43 and 44.

It appears that Bergmann is interpreting the trial court's statement on his "inappropriate use of the courts as a forum for his rantings, and his failure in this lawsuit to raise any legitimate objections to the denial of his Open Records request," as a determination within the meaning of § 802.05(3)(b), STATS. It is not clear to us whether the trial court did intend this. The court makes no reference to §§ 802.05 or 814.025, STATS. (costs upon frivolous claims and counterclaims). Immediately following the quoted statement the court cites § 814.29(3)(b), STATS., 1995–96, which, as we have discussed above, permitted the court to order the institution to deduct the unpaid fees and costs from the inmate's account at the time judgment was rendered, "if the judgment is in favor of the opposing party." There was no requirement under § 814.29(3)(b), 1995–96, that a court determine an action to be filed for

(b) The court may dismiss the action or special proceeding under par. (a) without requiring the defendant to answer the pleading if the court determines that the action or special proceeding meets any of the following conditions:

1. Is frivolous, as determined under s..814.025 (3).

2. Is used for any improper purposes, such as to harass, to cause unnecessary delay or to needlessly increase the cost of litigation.

3. Seeks monetary damages from a defendant who is immune from such relief.

4. Fails to state a claim upon which relief may be granted.

any of the purposes under § 802.05(3)(b) before it could enter an order deducting the unpaid fees and costs from the inmate's account at the time judgment was rendered.

The State in response does not discuss whether the court did make a determination that the action was filed for any reason listed in § 802.05(3), STATS., and, if it did, whether that is correct. Instead, it briefly asserts that we have already concluded in our order dated November 13, 1998, relying on *Taylor v. Rock County Sheriff's Dept.*, 223 Wis. 2d 134, 588 N.W.2d 356 (Ct. App. 1998), that 1997 Wis. Act 133 does not apply to Bergmann's appeal.

In *Taylor*, we concluded that the procedures in 1997 Wis. Act 133, § 28 for commencing an appeal without prepayment of fees and for notification by this court of the Department of Justice when we determine that an appeal or supervisory writ proceeding is frivolous, *see* § 809.103(2), STATS., did not apply to a prisoner filing a notice of appeal on August 3, 1998. *Id.* at 135, 588 N.W.2d at 357. We reached this conclusion because the retroactivity provision of 1997 Wis. Act 133 refers to "civil actions, special proceedings, injunctions and petitions for a common law writ of certiorari pending on the effective date," but does not refer to "appeals." *Id.* at 136, 588 N.W.2d at 357. Relying on *Taylor*, on November 13, 1998, we entered an order in this appeal stating that Bergmann's appeal was not subject to the retroactive application of 1997 Wis. Act 133. (Bergmann filed his notice of appeal in the trial court on August 31, 1998.)[16]

---

[16] We had previously ordered that Bergmann had to either pay the appellate filing fee of $150 or file the documentation required for a fee waiver for an appeal under 1997 Wis. Act. 133, § 28; § 809.103, STATS. We subsequently vacated that order to

We construe the State's discussion of 1997 Wis. Act. 133 as a concession that any finding of frivolousness or improper purpose made by the trial court would not count toward the three or more prior occasions referred to in § 801.02(7)(d), STATS. Bergmann has presented us with no reason for addressing the trial court's comments on his inappropriate use of the court and failure to raise any legitimate objections to the denial of his open records request, other than the possible effect this might have under § 801.02(7)(d). We therefore do not address this issue further.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

permit us to reconsider it in light of *Taylor*. Our November 13, 1998 order then reinstated this appeal based on *Taylor*.