# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-3629

ERIC G. EBERTS and DEBORAH R. EBERTS,

*Plaintiffs,*

*v.*

TORGE GODERSTAD, SVETLANA
GODERSTAD, also known as SUZANNE
GODERSTAD, and NATIONAL PLASTICS
TRADING COMPANY, INCORPORATED,

*Defendants-Appellants,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 527—**William C. Griesbach**, *Judge.*

ARGUED APRIL 7, 2008—DECIDED JUNE 29, 2009

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*.  This case arises from the sale of an expensive and historic home in Neenah, Wisconsin. After moving in, the buyers discovered numerous defects in the home and sued the sellers in federal district court for breach of contract, various forms of misrepresentation, and negligence. The present appeal is limited to a dispute about insurance coverage—specifically, whether the sellers' insurer has a duty to defend the sellers under the terms of several insurance policies, all of which provide defense-and-indemnity coverage for "property damage" caused by an "occurrence," which is defined in the policies as an "accident." The district court, sitting in diversity and applying Wisconsin law, held there was no duty to defend, entered summary judgment for the insurer, and certified the no-coverage judgment as final for purposes of an immediate appeal under Rule 54(b) of the *Federal Rules of Civil Procedure*.

In their briefs and at oral argument, the sellers maintained that their insurer's duty to defend was triggered by the allegations in two of the claims in the underlying lawsuit: a fraudulent misrepresentation claim under section 100.18 of the *Wisconsin Statutes* and a common-law negligent misrepresentation claim. The Wisconsin Supreme Court's intervening decision in *Stuart v. Weisflog's Showroom Gallery, Inc.* ("*Stuart II*"), 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448,[1] has eliminated the first of

---

[1] We refer to this decision as "*Stuart II*" because the court resolved other issues in the case in an earlier opinion, *see*

(continued...)

these arguments, as the sellers have conceded. As to the remaining argument, we conclude that the buyers' claim for negligent misrepresentation does not allege "property damage" caused by an "accident." Accordingly, the insurer owes no duty to defend, and we affirm the judgment of the district court.

## I. Background

Torge and Svetlana Goderstad owned a vintage 19th century home in Neenah, Wisconsin, and in 1996-1997 they enlarged it with a 4,000 square-foot addition. In 2003 they sold the home to Eric and Deborah Eberts for $1.85 million. The Ebertses took occupancy in August 2003 and by November began to notice defects in the exterior insulation and finishing work in the addition, which led to water leaks and moisture entrapment between the home's interior and exterior walls. These and other defects in the home prompted the Ebertses to sue the Goderstads and their home-based business, National Plastics Trading Co., Inc., in the United States District Court for the Eastern District of Wisconsin; the Goderstads had since moved to Colorado, and the suit invoked the court's diversity jurisdiction. The complaint alleged seven claims for relief under Wisconsin law: (1) breach of contract; (2) intentional misrepresentation; (3) a claim under

---

[1] (...continued)
*Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, 308 Wis. 2d 103, 746 N.W.2d 762, which the court referred to as "*Stuart I.*" *Stuart II*, 2008 WI 86, ¶¶ 3-4.

Wis. Stat. § 895.80(1)[2] for violation of Wisconsin's criminal theft statute, Wis. Stat. § 943.20; (4) strict-responsibility misrepresentation; (5) fraudulent misrepresentation in violation of § 100.18, which prohibits false, deceptive, or misleading representations in the sale of real estate; (6) negligent misrepresentation; and (7) negligence.

American Family Mutual Insurance Co., the Goderstads' insurer under several policies, appointed counsel for the Goderstads under a reservation of rights, *see Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 25, 311 Wis. 2d 548, ¶ 25, 751 N.W.2d 845, ¶ 25, and moved to intervene under Rule 24(a) of the *Federal Rules of Civil Procedure* in order to protect its interest in the lawsuit. The district court allowed the intervention and on American Family's motion, agreed to bifurcate the issues of liability and coverage.

American Family then moved for summary judgment on the coverage issue, which the district court granted. Applying Wisconsin law, the court held that none of the Ebertses' claims were covered under any of the Goderstads' policies and therefore the insurer had no continuing duty to defend. The district court then certified its judgment under Rule 54(b) of the *Federal Rules of Civil Procedure* to satisfy the final-judgment rule and permit immediate review. 28 U.S.C. § 1291; FED. R. CIV. P. 54(b). In its current posture, therefore, this case comes to us as the Goderstads versus American Family,

---

[2] This statute has since been renumbered; it now appears at Wis. Stat. § 895.446.

with the Goderstads as the appellants, opposing their insurer's early exit from the suit.

## II. Discussion

### A. The American Family Policies and Applicable Insurance-Law Principles

The Goderstads and National Plastics were covered under four American Family insurance policies during the relevant time period—a homeowner's policy, an umbrella liability policy, and two business policies—the relevant portions of which are not materially different. Each policy provides coverage for "property damage" caused by an "occurrence." As is usually the case, "occurrence" is defined in the policies as an "accident," but the term "accident" is otherwise left undefined. Wisconsin caselaw provides several alternative definitions, all of which attempt to capture the fortuity principle central to liability insurance. *Lucterhand v. Granite Microsystems, Inc.*, 564 F.3d 809, 812-13 (7th Cir. 2009). An "accident" for purposes of liability insurance coverage is "[a]n unexpected, undesirable event or an unforeseen incident which is characterized by a lack of intention." *Everson v. Lorenz*, 2005 WI 51, ¶ 15, 280 Wis. 2d 1, ¶ 15, 695 N.W.2d 298, ¶ 15 (internal quotation marks omitted). "'The word "accident," in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental.'" *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 37, 268 Wis. 2d 16, ¶ 37, 673

N.W.2d 65, ¶ 37 (quoting BLACK'S LAW DICTIONARY 15 (7th ed. 1999)).

American Family will owe a continuing duty to defend the Goderstads if the allegations in the Ebertses' complaint raise the possibility of coverage under the foregoing policy language. *Lucterhand*, 564 F.3d at 811; *Wausau Tile, Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 459 (Wis. 1999) ("[T]he duty to defend hinges on the nature, not the merits, of the claim."); *see also Doyle v. Engelke*, 580 N.W.2d 245, 248 (Wis. 1998). On appeal, the Goderstads have focused on just two of the seven claims in the underlying suit; they contend that the claim for fraudulent misrepresentation under § 100.18 and the claim for negligent misrepresentation fall potentially within their policies' coverages.[3]

---

[3] The Goderstads did not and do not now contend that the allegations in the Ebertses' breach-of-contract claim describe a covered "accident." Nor do they claim that either of the intentional misrepresentation claims (under the criminal theft statute or the common law of fraud or deceit) qualifies as a covered "accident." They did argue before the district court that the complaint's allegations of negligence (as distinct from negligent misrepresentation) triggered coverage. The district court, citing *Wausau Tile*, 593 N.W.2d at 459, dismissed the negligence claim for failure to state a claim; the claim was premised on an allegation that the Goderstads had negligently failed to inspect their house, and the court noted that "there is no duty to inspect one's home before selling it." The Goderstads have not pursued this issue on appeal.

**B.   *Everson* and the Court of Appeals' Opinion in *Stuart***

The parties' initial briefing and oral argument concentrated largely on the interplay between the Wisconsin Supreme Court's 2005 decision in *Everson v. Lorenz*, 2005 WI 51, 280 Wis. 2d 1, 695 N.W.2d 298, and the Wisconsin Court of Appeals' decision the following year in *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 184, 296 Wis. 2d 249, 722 N.W.2d 766. At issue in *Everson* was whether a commercial general liability policy provided coverage for claims of strict-responsibility and/or negligent misrepresentation. 2005 WI 51, ¶ 11. The plaintiffs, Paul and Michelle Everson, purchased a residential lot in a subdivision developed by the defendant, Richard Lorenz, unaware that their lot was within the boundary of a 100-year flood plain. Lorenz had provided the Eversons with a list of the lots partially within the flood plain, but the list erroneously designated lot 21 instead of lot 31 as among those affected. That is, lot 31—the parcel the Eversons purchased—was mistakenly designated as lot 21 on the list, making it appear that lot 31 was *not* in the flood plain. The Eversons sued Lorenz for strict-responsibility and negligent misrepresentation.[4]

Like the policies at issue here, Lorenz's insurance policy covered only losses caused by an "occurrence," defined as "an accident." The supreme court held that Lorenz's insurer was not obligated to defend the misrepresentation

---

[4] The Eversons' other claims—for breach of contract and intentional misrepresentation—were not before the court for purposes of its coverage inquiry. *Everson*, 2005 WI 51, ¶ 13 n.5.

claims. Using the definition of "accident" we have set forth above, the court concluded that Lorenz's misrepresentation about the lot "cannot be considered an 'accident' for purposes of . . . liability insurance coverage." *Id.* ¶ 18. The court noted that "[t]o be liable, Lorenz must have asserted a false statement, and such an assertion requires a degree of volition inconsistent with the term accident. Although this assertion may be prompted by negligence, it is nevertheless devoid of any suggestion of accident." *Id.* ¶ 19 (citation omitted). Thus, the court viewed the "degree of volition" inherent in the making of a false factual statement as incompatible with the common understanding of the term "accident." Accordingly, the court concluded that Lorenz's insurance policy did not cover the strict-responsibility and negligent misrepresentation claims asserted in the underlying complaint. *Id.* ¶¶ 19-20. This was so even though Lorenz did not intend to deceive the Eversons when he made the false statement but was merely alleged to have been negligent as to—or strictly responsible for—the statement's falsity. *Id.* ¶ 22.

*Everson* scotches insurance coverage for most misrepresentation claims where the policy in question limits coverage to losses caused by "occurrences," meaning "accidents"—as many liability policies do. Almost all cognizable claims of misrepresentation require a false statement of fact and therefore a degree of volition incon-

sistent with an "accident" under the rationale of *Everson*.[5] Indeed, the Goderstads agreed in the district court that based on *Everson*, the Ebertses' various misrepresentation claims against them were not covered. The district court accepted that concession and summarily disposed of the Goderstads' remaining argument—that the negligence claim was sufficient to trigger coverage—by dismissing that count for failure to state a claim. *See supra* note 3.

The district court's decision, however, was issued before the Wisconsin Court of Appeals decided *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 184, 296 Wis. 2d 249, 722 N.W.2d 766. *Stuart* involved the question of liability coverage for a loss incurred in connection with a claim for violation of a deceptive-practices regulation. The regulation in question, *Wisconsin Administrative Code* ATCP § 110.02(11), prohibits the making of any "false, deceptive or misleading representation in order to induce any person to enter into a home improvement contract." The case involved a building contractor who was retained on a home remodeling project and was later sued by the homeowner for serious defects in the remodeling work. The court of appeals heard the case in two stages: one concerning issues on the merits, *Stuart v.*

---

[5] An arguable exception might be a misrepresentation involving a failure to disclose a fact where the law imposes a duty to disclose. As we will discuss in a moment, however, misrepresentation by nondisclosure cannot be committed unintentionally; *negligent* misrepresentation by nondisclosure is not a recognized tort in Wisconsin.

*Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, 293 Wis. 2d 668, 721 N.W.2d 127, and the other concerning insurance-coverage issues, *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 184, 296 Wis. 2d 249, 722 N.W.2d 766.

In the second stage, the court of appeals held that the contractor's insurer was obligated to indemnify the contractor under its commercial general liability policy, which—again, like the policies here—provided coverage for loss caused by an "occurrence," defined as an "accident." The court of appeals reasoned that because a misrepresentation in violation of ATCP § 110.02(11) did not require intent to defraud, the contractor's misrepresentation could be considered an "accident" for purposes of the insurer's indemnity obligation. *Id.* ¶ 33. The court also noted that § 100.18—the consumer-protection statute on which the Ebertses have premised one of their misrepresentation claims in this case—should be read *in pari materia* with the court's interpretation of ATCP § 110.02(11). *Id.* ¶ 28.

On the strength of the court of appeals' decision in *Stuart*, the Goderstads asked the district court to reconsider its no-coverage decision. The court declined to do so, and this appeal ensued. In the meantime, however, the Wisconsin Supreme Court granted review in *Stuart*, and like the court of appeals, heard the case in two stages. *See Stuart v. Weisflog's Showroom Gallery, Inc.* (*Stuart I*), 2008 WI 22, 308 Wis. 2d 103, 746 N.W.2d 762 (involving merits issues); *Stuart v. Weisflog's Showroom Gallery, Inc.* (*Stuart II*), 2008 WI 86, 311 Wis. 2d 492, 308 Wis. 2d 103, 753 N.W.2d

448 (involving coverage issues). But when the Goderstads argued their case in this court, *Stuart II* was still pending and awaiting decision in the supreme court. The Goderstads suggested that we certify this case to the supreme court pursuant to Circuit Rule 52, but we opted to hold it in abeyance and required the parties to file supplemental briefs after the supreme court released its decision in *Stuart II*. They have done so.

### C.   The Wisconsin Supreme Court's Decision in *Stuart II*

### 1.  *Stuart II* and the § 100.18 Misrepresentation Claim

As we have noted, the Goderstads initially maintained, based on the court of appeals' decision in *Stuart,* that the Ebertses' misrepresentation claim under § 100.18 triggers American Family's duty to defend. They argued that the statute—like ATCP § 110.02, at issue in *Stuart*—lacks an intent-to-deceive element and therefore the alleged statutory misrepresentation should be considered a covered "accident." But the supreme court in *Stuart II* reversed the court of appeals, rejecting the argument that either ATCP § 110.02 *or* § 100.18 lack a scienter requirement; both the regulation and the statute require proof of a defendant's purpose or intent to induce a contract or sale. *Stuart II*, 2008 WI 86, ¶ 34 n.15. More specifically, ATCP § 110.02(11) prohibits the making of any "false, deceptive or misleading representation in order to induce any person to enter into a home improvement contract"; § 100.18 prohibits "any assertion, representation or statement of fact which is untrue, deceptive or misleading" made "with intent to sell" or "intent to

induce" a contract for the sale of (among other things) real estate.

It is true, as we have recently observed, that the *Stuart II* court was sharply divided on the underlying rationale for its decision; the case was decided by a three-justice plurality opinion and two concurrences, each of which attracted two votes. *See Lucterhand*, 564 F.3d at 814-15 (discussing the 3-2-2 split in *Stuart II*). But the court was unanimous in concluding that the misrepresentation claim was not covered; all of the justices agreed that a claim for misrepresentation under ATCP § 110.02 required a degree of "volition" that was inconsistent with the idea of an "accident." *Stuart II*, 2008 WI 86, ¶¶ 28-35. The "intent to sell" and "intent to induce [a contract]" language of § 100.18 is, if anything, even clearer on this point than the "in order to induce [a contract]" language in ATCP § 110.02. The supreme court's decision in *Stuart II* is fatal to the Goderstads' argument that the § 100.18 misrepresentation claim falls potentially within the coverage of their policies. They recognize as much, conceding the issue in the statement they filed with this court after *Stuart II* was released.

### 2. *Stuart II* and the Negligent Misrepresentation Claim

The Goderstads' remaining argument—that the Ebertses' negligent misrepresentation claim triggers coverage—would also fall short based on *Everson* alone, for the reasons we have already explained. But the split opinions in *Stuart II* have complicated the matter. To recap, *Everson*

held that strict-responsibility and negligent misrepresentation claims were not covered under policy language defining "occurrence" as an "accident" because the insured was alleged to have asserted a false statement and "such an assertion requires a degree of volition inconsistent with the term accident." *Everson*, 2005 WI 51, ¶ 19. The justices' disagreement in *Stuart II* centered primarily on the proper way to read *Everson*. *See Lucterhand*, 564 F.3d at 814-15.

The *Everson* decision appeared to establish a bright-line rule that the very act of making a false statement or assertion of fact—necessary to most claims for misrepresentation—was inherently repugnant to the idea of a covered "accident." As we have noted, the logic of this decision precludes coverage for almost all claims of misrepresentation, or at least all those that involve an affirmative false statement or assertion as opposed to a failure to disclose. *Everson*, 2005 WI 51, ¶¶ 19-20. The logic of the decision probably precludes coverage for any misrepresentation based on nondisclosure as well; in the limited circumstances where the law imposes a duty to disclose, the failure to do so is treated as the equivalent of an affirmative false representation.[6] *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 13, 283 Wis. 2d 555, ¶ 13, 699 N.W.2d 205, ¶ 13.

But in *Stuart II,* the court appears to have taken a position that is less categorical than *Everson*, or at least less

---

[6] But as we will discuss shortly, Wisconsin has not recognized a claim for strict-responsibility or negligent misrepresentation based on nondisclosure.

clear. We described the competing positions of the justices at greater length in *Lucterhand*, 564 F.3d at 814-15, and need not repeat that discussion here. It suffices to say that only Justice Roggensack, joined in concurrence by Justice Ziegler, adhered to a "bright-line" interpretation of *Everson. Stuart II*, 2008 WI 86, ¶¶ 92-104 (Roggensack, J., concurring). Justice Bradley, joined in concurrence by Chief Justice Abrahamson, rejected that view; this was unsurprising, since they had dissented in *Everson*. *Id.* ¶¶ 72-80 (Bradley, J., concurring); *Everson*, 2005 WI 51, ¶¶ 434-61 (Bradley, J., dissenting). The three justices in the plurality sidestepped the debate between the concurrences, focusing instead on the purposive "inducement" element of the ATCP § 110.02 claim. The plurality concluded that the contractor's false representations about his qualifications and design were both "volitional" and (as required for a violation of ATCP § 110.02) made "in order to induce" the making of a home-improvement contract, and that this combination rendered the loss "nonaccidental." *Stuart II*, 2008 WI 86, ¶ 40. Justice Bradley and Chief Justice Abrahamson joined this part of the plurality opinion, with certain provisos that are not important to the analysis here. *Id.* ¶¶ 70-80 (Bradley, J., concurring); *see also Lucterhand*, 564 F.3d at 814-15 (explaining the disagreement between the *Stuart II* plurality opinion and Justice Bradley's concurrence).

Significantly, *Stuart II* involved a claim for misrepresentation in violation of ATCP § 110.02, *not* a claim for negli-

gent misrepresentation.[7] Although the justices disagreed about how to interpret *Everson*, there is nothing in the *Stuart II* opinions to suggest that the *holding* of *Everson* is no longer good law. *Everson* held that a false assertion of fact giving rise to a strict-responsibility or negligent misrepresentation claim is not an "accident" for purposes of liability coverage, and that holding is fully applicable here.

In their supplemental brief, the Goderstads do not contest this conclusion but maintain instead that because the Ebertses' complaint alleges *nondisclosures*, the negligent misrepresentation claim "by definition" involves "an inadvertent, non-volitional failure to act" rather than a "volitional" false statement of fact. They argue that a negligent failure to disclose material facts qualifies as a "nonvolitional" act under *Stuart II* and is therefore an "accident" for purposes of coverage under their insurance policies.

The problem with this argument is that negligent misrepresentation by nondisclosure has not been recognized as a tort in Wisconsin. *See Kaloti*, 2005 WI 111, ¶ 13 n.3 ("We have never held that a claim for strict responsibility for misrepresentation or negligent misrepresentation can

---

[7] The plurality said in a footnote that it was not resolving "the question of whether an 'occurrence' in a future case could involve an accidental misrepresentation, in which a person may have misspoken." *Stuart II*, 2008 WI 86, ¶ 44 n.17. This is a bit imprecise; mere "misspeaking" is not actionable in tort. Negligent misrepresentation requires more. *See* RESTATEMENT (SECOND) OF TORTS § 552 (1977).

arise from failure to disclose.").[8] The foundational and oft-cited case of *Ollerman v. O'Rourke Co.* specifically declined to adopt a negligent misrepresentation-by-nondisclosure claim, 288 N.W.2d 95, 112 (Wis. 1980); *Ollerman's* endorsement of a limited species of liability for nondisclosure pertained to the tort of *intentional* misrepresentation, *id.* at 99-107. Negligent misrepresentation by nondisclosure is a claim of questionable heritage and has been soundly rejected in some jurisdictions.[9] *See, e.g., Martin v. Ohio State*

---

[8] In this regard, Wisconsin's pattern jury instructions conflict with the caselaw. *See* WISCONSIN JURY INSTRUCTIONS—CIVIL 2402, 2403 (2009) (stating, contrary to *Kaloti,* that "silence if there is a duty to speak" may constitute a representation of fact for purposes of strict-responsibility and negligent misrepresentation).

[9] Misrepresentation-by-nondisclosure cases (*Ollerman* included, *see* 288 N.W.2d at 99-107) often rely on § 551 of the *Restatement (Second) of Torts*. That section, titled "Liability for Nondisclosure," is somewhat confusingly phrased. Subsection (1), setting forth the general liability principle, states that "[o]ne who fails to disclose to another a fact that *he knows may justifiably induce* the other to act or refrain from acting in a business transaction" is liable *if* he has a duty to disclose. RESTATEMENT (SECOND) OF TORTS § 551(1) (1977) (emphasis added). Liability is thus stated in terms of the actor's intent; the actor must fail to disclose a fact that *he knows* may justifiably induce the other to act. The liability principle is qualified, however; the circumstances must give rise to a duty to disclose before liability can attach. Nondisclosure of a fact the actor knows will induce another to act can give rise to liability "if, but only if, [the actor] is under a duty to the other to

(continued...)

*Univ. Found.*, 742 N.E.2d 1198, 1209 (Ohio Ct. App. 2000) ("A negligent misrepresentation claim does not lie for omissions: there must be an affirmative false statement."); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996); *Richey v. Patrick*, 904 P.2d 798, 802 (Wyo. 1995); *Matthews v. Kincaid*, 746 P.2d 470, 471 (Alaska 1987). We recognize, of

---

[9] (...continued)

exercise reasonable care to disclose the matter in question." *Id.* This is the language of negligence, and it is a bit hard to reconcile with the intent requirement specified in the general liability principle. Section 551 thus appears to require *both* that the tortfeasor act knowingly (in the sense that he knows of the other party's specific reliance and yet does not disclose) *and* that he violate the standard of reasonable care.

We doubt that a *limiting* principle on an intent-based tort was meant to *expand* liability to include mere negligence as a general matter; the tort of negligent misrepresentation is separately addressed in § 552 of the *Restatement*, and the scope of liability for negligent misrepresentation described there is quite circumscribed. Subsection (2) of § 551 lists the limited circumstances under which a duty to disclose may arise, and comment *m* clarifies that whether there is a duty to disclose "is always a matter for the determination of the court." In short, any expansion of liability for misrepresentation based on nondisclosure is a difficult and important common-law policy issue. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 15, 270 Wis. 2d 146, ¶ 15, 677 N.W.2d 233, ¶ 15 (noting that whether to extend the duty to disclose "is a significant common-law policy issue."). We will not speculate here about whether the Wisconsin Supreme Court is likely to recognize a claim of negligent misrepresentation based on nondisclosure.

course, that an insurer's duty to defend is determined on the basis of "arguable, as opposed to actual, coverage." *Estate of Sustache*, 2008 WI 87, ¶ 20. "It is the *nature* of the alleged claim that is controlling, even though the suit may be groundless, false, or fraudulent." *Id.* Perhaps this rule is (or should be) different for claims that lack *any* basis in the law; if the only claim even arguably supporting coverage must be dismissed as legally insufficient, dismissal of that claim may be appropriate during the coverage phase of the litigation. That is how the district court handled the negligence claim here, and we see nothing improper in this approach. *See supra* note 3.

Regardless, the Goderstads still cannot prevail. Even assuming for the sake of argument that a negligent misrepresentation by nondisclosure claim were cognizable in Wisconsin and that such a claim involved acts that are sufficiently "nonvolitional" under *Stuart II* to count as an "accident," the American Family policies limit coverage to "property damage," and the misrepresentations alleged here did not cause property damage. It is well established in Wisconsin that misrepresentations generally do not cause property damage; they cause pecuniary or economic loss. *Everson*, 2005 WI 51, ¶ 39; *Smith v. Katz*, 595 N.W.2d 345, 352-54 (Wis. 1999); *see also* WISCONSIN JURY INSTRUCTIONS—CIVIL 2400 (Law Note discussing the "benefit of the bargain" and "out of pocket" measures for damages in intentional, strict-responsibility, and negligent misrepresentation cases).

*Stuart II* was perhaps an anomalous exception. There, the contractor's misrepresentations about his qualifications

and design were coupled with negligence in the performance of the remodeling contract; the jury heard evidence and awarded damages based on numerous items of damage to the home. *Stuart II*, 2008 WI 86, ¶¶ 52-54. Damages were assessed in a lump sum, and the jury was asked to apportion the damages between the ATCP § 110.02 misrepresentation and negligence claims. The supreme court in *Stuart I*, however, threw out the apportionment, so there was no distinction in the measure of damages as between the two claims. 2008 WI 22, ¶¶ 25-31.

This case is different. Although the complaint describes many defects in the home the Goderstads sold to the Ebertses, the Goderstads' alleged misrepresentations did not cause those defects. The injury caused by the misrepresentations was purely pecuniary or economic; because of the misrepresentations, the home was worth less than the Ebertses paid for it. For this additional reason, there is no coverage. American Family has no duty to defend the Goderstads.

## D. Additional Policies?

We need only briefly address one final issue, and that is whether the district court should have considered certain additional insurance policies the Goderstads acquired after selling their home and moving to Colorado. The district court declined to consider the issue because the Goderstads made only fleeting reference to these policies—indeed, presented no evidence pertaining to them—at the time the court took up American Family's

motion for summary judgment. As we have said many times before, a motion for summary judgment requires the responding party to come forward with the evidence that it has—it is "'the "put up or shut up" moment in a lawsuit.'" *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999), *rev'd on other grounds*, *Higgins v. Mississippi*, 217 F.3d 951 (7th Cir. 2000)). The district court's decision was manifestly correct.

For the foregoing reasons, we AFFIRM the judgment of the district court and DENY the Goderstads' motion to certify a question to the Wisconsin Supreme Court under Circuit Rule 52.