NOTICE
Decision filed 01/02/19. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2019 IL App (5th) 170114

NO. 5-17-0114

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| BRADLEY A. LAVITE, Superintendent of the Veterans Assistance Commission of Madison County, Illinois, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| | ) | |
| Plaintiff-Appellee and Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-MR-145 |
| | ) | |
| ALAN J. DUNSTAN, Chairman of the Madison County Board; JOSEPH D. PARENTE, County Administrator of Madison County, Illinois; THE MADISON COUNTY BOARD; and JOHN D. LAKIN, Sheriff of Madison County, Illinois, | ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (The Madison County Board, Defendant-Appellant and Cross-Appellee). | ) ) | William J. Becker, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.[*]

**OPINION**

¶ 1    Defendant, Madison County Board (Board), appeals from an order of the circuit court, granting plaintiff Bradley A. Lavite's motion for summary judgment on count III of his complaint for *mandamus*. The Board contends that plaintiff failed to satisfy all of the procedural and legal requirements to secure *mandamus* relief and that the trial court relied on unauthenticated and erroneous evidence in reaching its decision. The Board also contends that

_____

[*]Justice Goldenhersh fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

the trial court erred in denying its motion to disqualify and sanction plaintiff's counsel. The plaintiff filed a cross-appeal and alleged, among other things, that the circuit court erred in not entering an order of *mandamus* requiring defendant to pay all future warrants submitted by the Madison County Veterans Assistance Commission (VAC) as long as the VAC has funds in its accounts.

¶ 2                    I. BACKGROUND AND PROCEDURAL HISTORY

¶ 3      This is the third time this case has been before us. This chapter involves a dispute over the amount of control and oversight the Board has over VAC operations under the Military Veterans Assistance Act (Act) (330 ILCS 45/0.01 *et seq.* (West 2016)). A summary of the factual and procedural history from the prior cases, *Lavite v. Dunstan*, 2016 IL App (5th) 150401 (*Lavite I*), and *Lavite v. Dunstan*, 2018 IL App (5th) 160519-U (*Lavite II*), follows.

¶ 4                              A. *Lavite I*

¶ 5      On June 12, 2016, the plaintiff, Bradley A. Lavite, in his capacity as superintendent of the VAC, filed a three-count complaint against defendants, Alan J. Dunstan, chairman of the Madison County Board; Joseph D. Parente, county administrator of Madison County; the Madison County Board; and John D. Lakin, sheriff of Madison County. The complaint related to a standing order, issued by administrator Parente on March 20, 2015, prohibiting the plaintiff from entering his VAC office in the Madison County administration building and warning the plaintiff that he would be arrested for trespass if he failed to abide by the order. In the complaint, the plaintiff alleged that he was wrongfully denied access to his VAC office in the Madison County administration building. The plaintiff sought a writ of *mandamus*, directing the defendants to allow him access to his office in the Madison County administration building (count I), to process payroll warrants for his salary as superintendent of the VAC (count II), and

2

to pay other warrants submitted by the plaintiff for attorney fees related to this litigation from VAC funds (count III). The trial court granted the defendants' motion to dismiss all counts on the pleadings, and the plaintiff appealed.

¶ 6     In an opinion issued on August 5, 2016, we found that the trial court erred in dismissing count I and count III of the plaintiff's complaint. *Lavite I*, 2016 IL App (5th) 150401. We vacated those orders and remanded the case to the trial court with instructions to deny the defendants' motions to dismiss counts I and III. Specifically as to count III, which remains at issue, we determined that county officials did not have the authority to subject the VAC to the county's ordinances addressing competitive purchases and/or expenditures in excess of $5000 when they processed VAC warrants to pay plaintiff's attorney fees from funds that had been appropriated for VAC expenses in that fiscal year. *Lavite I*, 2016 IL App (5th) 150401, ¶¶ 45, 47. In the opinion, we noted that the defendants conceded that the plaintiff's attorney fees must be paid from funds that had already been appropriated to the VAC to the extent such funds were available. *Lavite I*, 2016 IL App (5th) 150401, ¶¶ 48, 50.

¶ 7     The case was remanded, and the mandate issued on September 14, 2016. At that point, the case was in the pleading stage. Upon remand, the presiding trial judge recused himself, and pursuant to a request from the chief judge in Madison County, the Illinois Supreme Court appointed a judge from outside the circuit to hear the case.

¶ 8                                    B. *Lavite II*

¶ 9     On August 25, 2016, plaintiff's counsel, Thomas Burkart, delivered a letter to the Madison County treasurer, demanding payment of his fees for the legal services he provided to the plaintiff. Burkart included a redacted invoice showing a balance due of $60,365.92 for legal services and "VAC Warrant #16-4, Superintendent's Warrant/Order on County Treasurer to Pay

3

Appropriated Funds" (Warrant No. 16-4). Warrant No. 16-4 contained a directive from the plaintiff to the county treasurer to pay $60,365.92 to Burkart's law firm from "appropriated funds on hand." In the letter, Burkart advised that the plaintiff approved the fees after thoroughly reviewing the invoice, including a complete description of services. Burkart asserted that the defendants had no authority to demand to review an unredacted copy of the invoice. He warned that failure to make full payment of the invoice would be in direct contravention of the appellate court's decision in *Lavite I*. The record shows that the attached invoice identified the dates of service, the number of hours, and the amount charged, but the description-of-services sections were completely blank. The record also shows that invoices submitted by Burkart prior to the decision in *Lavite I* included a fairly full description of the legal services provided, with some redaction of material based on the attorney-client privilege.

¶ 10    On September 6, 2016, Jennifer Zoelzer, Chief Deputy Auditor of Madison County, emailed plaintiff's counsel to inform him that the redactions on the invoice were too extensive and that, in order to process payment of Warrant No. 16-4, she would need a revised invoice with "some type of general description for services." In a reply email dated September 7, 2016, plaintiff's counsel warned Zoelzer that she and the auditor's office may be subject to contempt proceedings if they continued to interfere with VAC warrants. During a regular meeting on September 14, 2016, the Madison County finance committee discussed this matter and then directed county auditor Rick Faccin to notify the VAC that there would be insufficient funds in their 2016 administrative budget to meet the VAC's payroll through the end of the fiscal year if the attorney's invoice was paid.

¶ 11    Pursuant to the direction of the Madison County finance committee, auditor Faccin wrote a letter to the VAC. In this letter, Faccin advised that, upon payment of $60,365.92 in attorney

fees and the VAC payroll for September 2016, the VAC's administrative budget would be exhausted and that any increase in the administrative budget to cover additional expenses incurred in 2016 would require a special emergency appropriation, approved by the Board. Faccin also noted that the description of legal services section in the attorney's invoice had been fully redacted. He informed the VAC that the auditor's office had the authority to audit any warrant presented for payment and that it was not the practice of the auditor's office to remit payment for undisclosed services.

¶ 12    On September 15, 2016, Robert Sedlacek, president of the VAC executive board, wrote a letter to auditor Faccin, wherein Sedlacek advised that the plaintiff had reviewed the unredacted invoice from his attorney and had approved it. Sedlacek indicated that the VAC Executive Board had recently learned of the existence of an unreserved fund account in the county treasury that contained funds levied for the VAC and that, having learned of the existence of this fund, the Executive Board was now directing county officials to pay Warrant No. 16-4, and to use as much of the balance in the unreserved fund as necessary to assure that the VAC would meet all of its obligations, including all salaries.

¶ 13    On September 16, 2016, the plaintiff filed a petition for rule to show cause why the defendants should not be held in contempt of court for refusing to pay his counsel's attorney fees in compliance with this court's opinion and mandate in *Lavite I*. On September 23, 2016, the defendants filed an objection to the plaintiff's petition for rule to show cause. The defendants asserted that the petition lacked merit because there was no order from the appellate court or the trial court directing them to pay the plaintiff's attorney fees. On October 5, 2016, the trial court held a telephonic hearing on the plaintiff's petition for rule to show cause and took the matter under advisement. In an order issued on October 19, 2016, the court granted the petition and

ordered county officials to appear for a hearing on November 18, 2016. The court also indicated it would hear arguments on the plaintiff's motion for a preliminary injunction on that date.

¶ 14    On November 14, 2016, the defendants filed two motions to dismiss the plaintiff's petition for rule to show cause. In the first motion brought pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), the defendants argued that the petition failed to state a cause of action because the alleged contemnors had not refused to comply with the mandate of the appellate court or any order of the trial court. The defendants asserted that the only order issued by the appellate court in *Lavite I* was an order directing the trial court to deny the defendants' motions to dismiss counts I and III of the plaintiff's complaint and that, contrary to the plaintiff's contention, neither the appellate court nor the trial court had ordered the defendants to pay the plaintiff's attorney fees from VAC funds.

¶ 15    The defendants also filed a motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619(a)(9) (West 2016)) and alleged, in part, that the plaintiff's claim for payment in full of his attorney fees was moot because the entirety of the administrative funds appropriated for the VAC for fiscal year 2016 had been exhausted. The defendants indicated that after the VAC employee payroll was processed for November 4, 2016, and November 18, 2016, a check in the sum of $14,548.88 was tendered to plaintiff's counsel, and that this payment consumed the balance of the Administrative Fund for fiscal year 2016. The defendants noted that while an emergency appropriation could be made, such an appropriation is purely discretionary, requiring approval by not less than two-thirds of all county board members.

¶ 16    An affidavit by county administrator Parente was attached in support of the defendants' motion to dismiss. Parente averred that plaintiff's counsel had been paid $78,240.01 for work on behalf of the VAC during the 2016 fiscal year and that the additional invoice for $60,365.92

6

would result in a total payment of $138,605.93 for attorney fees, representing 38% of the VAC's administrative budget. Parente noted that, upon paying the salaries of VAC's employees through the end of the fiscal year, there was a balance was $14,548.88 in the VAC's Administrative Fund, which was tendered to plaintiff's counsel. Parente stated that payment of any additional expenses incurred by the VAC in fiscal year 2016 would require a special appropriation, approved by two-thirds of the Board.

¶ 17    An evidentiary hearing was held on November 18, 2016. Prior to the presentation of testimony, the parties agreed that the Madison County Board had approved a total of $517,224 in VAC funding for the fiscal year 2016, and of that sum, $364,424 was appropriated for the Veterans Assistance Administrative Fund (Administrative Fund) and $152,800 was appropriated for the Veterans Aid to Vets Fund (Direct Aid Fund). Defendants' counsel stipulated that there was an unreserved fund account in the county treasury that contained funds from property taxes that had been levied in prior years for veterans' assistance. Counsel explained that the unreserved fund consisted of tax money from two sources. One source was funds that had been appropriated pursuant to the VAC's annual funding requests, but were not spent in the years appropriated. The second source was from taxes that had been levied and collected, but exceeded the VAC's funding requests in given years, and consequently, had not been appropriated for the VAC.

¶ 18    During the hearing, the plaintiff testified that as of November 18, 2016, there was a balance of $14,548.88 in the 2016 Administrative Fund and $53,683.42 in the 2016 Direct Aid Fund. The plaintiff estimated that there would be a balance of several thousand dollars in the Direct Aid Fund at the close of the fiscal year on November 30, 2016. He believed that the VAC could transfer money from the Direct Aid Fund to the Administrative Fund to pay the attorney fees. Assistant auditor Jennifer Zoelzer also testified. Zoelzer stated that a check in the sum of

7

$14,548.88 had been tendered to plaintiff's counsel in partial payment of VAC Warrant No. 16-4, and that upon making that payment, there was a zero balance in the VAC Administrative Fund. Zoelzer further testified that there was a balance of approximately $53,600 in the Direct Aid Fund.

¶ 19   Following the testimony, plaintiff's counsel argued that the VAC could transfer money from its Direct Aid Fund to its Administrative Fund to pay the balance owed for attorney fees, without a supplemental appropriation by the Board. Counsel also argued that the attorney fees could be paid from the balance in the unreserved fund, without a supplemental appropriation. Counsel concluded that the county had levied, collected, and appropriated those funds for the VAC and, thereafter, had no right to interfere with the VAC's decisions regarding its expenditures. Defendants' counsel argued that after exhausting the 2016 administrative budget, the VAC did not have authority to transfer money from the Direct Aid Fund to the Administrative Fund or draw money from the unreserved fund balance without an emergency appropriation approved by two-thirds of the Board.

¶ 20   After considering the pleadings, documents, and arguments, the trial court entered an order granting in part and denying in part the plaintiff's motion for preliminary injunction. The court denied the plaintiff's request to enjoin the defendants to pay the balance of the attorney fees from the Direct Aid Fund or the unreserved fund. The court expressed concern about whether the plaintiff's attorney fees could be paid from either fund without a supplemental appropriation by the Board. The court enjoined the county to maintain a balance of at least $45,817 in the unreserved fund to pay the attorney fees, pending a resolution of the issue. The court also entered an order discharging the rule to show cause against alleged contemnors.

¶ 21   On December 13, 2016, the plaintiff filed an interlocutory appeal pursuant to Illinois

Supreme Court Rule 307(a)(1) (eff. July 1, 2017). The plaintiff claimed that the trial court erred in granting in part and denying in part his request for a preliminary injunction. The plaintiff also claimed that the trial court erred in discharging the rule to show cause order.

¶ 22 On appeal, this court affirmed the trial court's decision to grant in part and deny in part the plaintiff's motion for a preliminary injunction. *Lavite II*, 2018 IL App (5th) 160519-U. We noted that the trial court was asked to consider whether the VAC was authorized, upon exhaustion of the 2016 Administrative Fund, to pay the attorney fees owed, from monies remaining in the 2016 Direct Aid Fund or from the unreserved fund, without a supplemental appropriation. We also noted that this question had not been considered in *Lavite I*. We concluded that the trial court's order requiring county officials to maintain sufficient funds in the VAC's unreserved fund to pay the attorney fees would best maintain the status quo pending a determination of those issues on the merits. We also found that the court's decision to discharge the rule to show cause was not a final, appealable order, and thus, we were without jurisdiction to consider it.

¶ 23                             C. *Lavite III*

¶ 24 During the pendency of the interlocutory appeal, the litigation proceeded in the trial court, with the parties continuing to wrangle over the payment of the plaintiff's attorney fees. On December 14, 2016, plaintiff's counsel sent a letter and a new warrant, Warrant No. 16-5, to the Interim Madison County Treasurer. Warrant No. 16-5 covered the period from August 19, 2016, through November 30, 2016, and included charges for legal services previously submitted, but unpaid, and new charges. The new warrant indicated that $96,021.80 was owed for plaintiff's attorney fees. Plaintiff's counsel also included a 16-page invoice, in which he identified each date of service, number of hours, and the charges for each entry, but again redacted the

9

description of services provided on grounds that the description-of-services section contained material protected under the attorney-client privilege. In the letter, counsel related instructions from the VAC Executive Committee, directing that if there were insufficient funds remaining in the Administrative Fund and the Direct Aid Fund for fiscal year 2016, the treasurer was to use as much of the VAC's unreserved funds as necessary to pay the attorney fees and other fiscal year 2016 expenses.

¶ 25   On December 15, 2016, plaintiff's counsel sent an email to Deputy Auditor Zoelzer and attached Warrant No. 16-5 and the updated invoice. In the email, counsel stated that while the VAC maintained its position that county officials were not entitled to a detailed description of his legal services, he was willing to provide a breakdown for the four matters for which the VAC had retained him. He noted that his invoice covered legal representation related to the state court action for *mandamus* ($12,810.65), the contempt proceedings ($25,150.02), a section 1983 action filed in the federal district court on August 5, 2016 ($6092.50), and investigation into an alleged loss of approximately $400,000 from the unreserved fund since 2009 ($4657.50).

¶ 26   With the beginning of the new year came a flurry of motions and responses. On January 9, 2017, the plaintiff filed a petition for rule to show cause why the defendants and other county officials should not be held in contempt for violating the preliminary injunction entered on November 18, 2016. The plaintiff incorrectly stated that county officials had been enjoined from spending any of the money—approximately $700,000—in the VAC's unreserved fund. The plaintiff alleged that the county "drained" at least $35,316 from that fund during the period between November 18, 2016, and November 30, 2016, and he attached a copy of the auditor's year end Comparative Statement of Financial Position for the VAC in support of this allegation.

¶ 27   On January 20, 2017, the plaintiff filed a second petition for rule to show cause, this one

against the newly elected treasurer. The plaintiff alleged that the treasurer's office failed to pay Warrant No. 16-5, despite the fact that as of December 1, 2016, the VAC had $350,000 in its Administrative Fund for fiscal year 2017. The plaintiff also filed a petition for the appointment of a special state's attorney and alleged that the state's attorney had a conflict of interest created by changes in leadership following county elections in November 2016.

¶ 28 On January 24, 2017, the plaintiff moved to voluntarily dismiss count I of his complaint. The plaintiff asserted that a writ of *mandamus*, directing county officials to permit the plaintiff to have access to his office, was no longer necessary because Chairman Dunstan had been defeated in the November 2016 election and the newly elected chairman had lifted the order banning the plaintiff from county property.

¶ 29 On February 9, 2017, the defendants filed an answer to the plaintiff's January 9, 2017, petition for rule to show cause. The defendants pointed out that the preliminary injunction prohibited county officials from spending down the balance in the unreserved fund below $45,817.04, the amount owed for plaintiff's attorney fees, and that the plaintiff presented no facts, nor any credible argument, to establish probable cause that county officials violated the injunction. The defendants asserted that the plaintiff had misrepresented the content of the court's preliminary injunctive order, and asked the court to deny the plaintiff's motion for rule to show cause, and to sanction the plaintiff for his frivolous pleadings.

¶ 30 The defendants also filed an answer to the plaintiff's petition for rule to show cause against the newly elected treasurer. The defendants initially asserted that the treasurer had not violated any court orders. The defendants also argued that the treasurer should not be held in contempt for refusing to pay Warrant No. 16-5, where the VAC Administrative Fund for 2016 had been exhausted. The defendants noted that payment of the warrant would result in overages

11

totaling $116,236.49 in the 2016 Administrative Fund and that historically budget overages were addressed through emergency appropriations, approved by the Board. The defendants further noted that the attorney fees reflected in Warrant No. 16-5 had been incurred in fiscal year 2016, and that using monies appropriated for the 2017 Administrative Fund to pay expenses incurred in fiscal year 2016 would violate generally accepted accounting principles. Finally, the defendants argued that the attorney's invoice did not comply with the county's standardized and uniformly applied policies requiring itemized invoices and that, despite several requests, the plaintiff refused to submit an invoice containing some description of the services provided.

¶ 31 In orders entered on February 14, 2017, the trial court denied both of the petitions for rule to show cause, stating that it was not apparent to the court that any order was "clear enough legally and factually" to hold anyone in contempt. The court also granted the plaintiff's motion to voluntarily dismiss count I of the complaint.

¶ 32 In February 2017, the plaintiff filed a motion for judgment on count III, pursuant to section 2-1005(a) of the Code (735 ILCS 5/2-1005(a) (West 2016)). As a part of his motion, the plaintiff asked the court to take judicial notice that "someone, yet to be identified by the defendants, paid $65,965.73 in excess of the zero balance that was left in the VAC Administrative Fund on November 18, 2106, resulting in a negative balance for fiscal year 2016, all without an emergency appropriation." The plaintiff also asked the court to take judicial notice that on November 16, 2016, the Board approved the VAC's request for $554,194 in funding for fiscal year 2017, including $402,174 for the Administrative Fund and $152,800 for the Direct Aid Fund, and that on December 13, 2016, the VAC delivered Warrant No. 16-5 to the interim county treasurer seeking payment of unpaid attorney fees totaling $96,021.80 for legal services performed between August 19, 2016, and November 30, 2016. The plaintiff also asked the court

12

to consider the defendants' admission that the defendants had an obligation to pay VAC warrants for attorney fees so long as the VAC had the necessary funding. The plaintiff argued that the VAC had the necessary funding to pay the attorney fees from the 2017 Administrative Fund or the unreserved fund. The plaintiff sought a judgment as to count III of his complaint, and orders requiring the county to pay in full Warrant No. 16-5 within two days of the entry of the order and to pay all future VAC Warrants issued by the VAC superintendent unless there were insufficient funds in the county treasury. As relief in the alternative, the plaintiff requested a preliminary injunction prohibiting the defendants from refusing to pay VAC Warrant 16-5 and any subsequent VAC warrants during the pendency of the case.

¶ 33    On February 17, 2017, the defendants filed a motion to dismiss count III of the plaintiff's complaint. The defendants asserted that *mandamus* was not a proper remedy, that plaintiff failed to comply with section 9 of the Act (330 ILCS 45/9 (West 2016)) and the county's requirements for invoices before seeking *mandamus* relief, and that the plaintiff failed to exhaust his administrative remedies in that he failed to request an emergency appropriation before seeking *mandamus* relief. The defendants also filed a motion to disqualify and to sanction plaintiff's counsel because of counsel's alleged improper *ex parte* communications with parties to the litigation and conflicts of interest.

¶ 34    The trial court heard all pending motions on February 23, 2017, and issued its rulings in a written order dated March 13, 2017. The trial court denied the defendants' motion to dismiss count III of the complaint and their motion to disqualify and to sanction plaintiff's counsel. The court, over objection, granted the plaintiff's motion to take judicial notice that the Board approved the VAC's request for $554,194 in funding for fiscal year 2017, including $402,174 for the Administrative Fund and $152,800 for the Direct Aid Fund on November 16, 2016, and that

13

the plaintiff presented Warrant No. 16-5 to the county treasurer for payment on December 13, 2016. The court also granted the plaintiff's motion for summary judgment on count III of the complaint. The court noted that it had reviewed the opinion in *Lavite I* and concluded that the appellate court "does not mean to impose any other requirement for disbursal of appropriated VAC funds other than the approval of the VAC administrator after review of itemized bills" and that the appellate court would find that *mandamus* was "an appropriate remedy to provide for the payment of administrative expenses even though not explicitly provided for in the statute." The court denied the plaintiff's alternative motion for a preliminary injunction and his motion for appointment of a special state's attorney.

¶ 35    On March 24, 2017, the court entered a "Supplemental Judgment." The court incorporated the orders entered on March 13, 2017, and ordered county officials to pay Warrant No. 16-5. The order further provided:

> "Within five (5) days following actual receipt of a sworn warrant from the VAC Superintendent attesting under oath that the Superintendent has received, reviewed and approved itemized statements for work performed or services rendered to or for the VAC, the Madison County Treasurer and County Clerk shall countersign a check in payment of any expenses for which available and unspent funds have been previously appropriated for use by the VAC. For purposes of this Order, the VAC's Direct Aid to Veterans Appropriation and the Administrative Fund Appropriation shall be treated separately and subject to separate prior appropriation caps."

The court indicated that it made no findings with regard to the ownership of the balance of any funds on deposit in the county treasury resulting from prior levies because the court felt that issue was either before the federal court in a separate litigation or before this court in *Lavite II*.

14

The court denied the plaintiff's request that the *mandamus* order apply to all future warrants submitted by the VAC for payment. The court found that its supplemental judgment resolved all remaining issues between the parties and was a final and appealable order.

¶ 36 On March 31, 2017, the plaintiff filed a motion attacking portions of the supplement judgment. On that same date, the plaintiff filed yet another petition for rule to show cause against the county treasurer and therein alleged that the treasurer failed to pay the attorney fees within five days after receipt of a sworn warrant from the VAC superintendent attesting that he had received, reviewed, and approved itemized statements of the order, as required in the supplemental judgment. The plaintiff also renewed his petition for the appointment of a special state's attorney. The defendants filed a motion to stay enforcement of the judgment and to waive the bond requirement for the instant appeal. In an order entered following a hearing on April 27, 2017, the trial court denied the plaintiff's postjudgment petition, struck the plaintiff's petition for rule to show cause, and granted the defendants' motion to stay enforcement of the judgment and to waive bond on appeal. The Board appealed. Subsequently, the plaintiff filed a cross-appeal.

¶ 37                                    II. ANALYSIS

¶ 38                          A. Appellate Jurisdiction

¶ 39 Initially, we consider the plaintiff's motion to dismiss the appeal for lack of jurisdiction. The plaintiff raised the jurisdictional issue in his brief and in a separate motion to dismiss. The plaintiff claims that appellate jurisdiction is lacking because the trial court's judgment did not dispose of all issues between the parties and the court did not make an express finding that there was no just reason to delay enforcement or appeal of its order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). In support of his argument, the plaintiff indicates that he filed a section 1983 action against the defendants in federal court, that he included an "ancillary" state

15

claim for an accounting of the VAC's unreserved fund in his complaint, and that the defendants moved to dismiss the federal claims on a number of grounds, including impermissible claim splitting, and asked the federal court to decline supplemental jurisdiction over the state law claim for an accounting, upon dismissal of the federal claims. The plaintiff claims that when he notified the trial court in the case at bar of the pending motions to dismiss in his federal case, the court initially indicated that it would reserve ruling on an accounting. The plaintiff concluded that an accounting of the unreserved fund remains an issue between the parties, and that the supplemental judgment is not final and appealable as it did not dispose of that issue.

¶ 40    Claim splitting, a form of *res judicata*, precludes a party from bringing a duplicative lawsuit arising from the same transaction or events underlying a previous suit by simply changing the legal theory. See *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340 (1996). In this case, the plaintiff filed a three-count complaint seeking *mandamus* relief. The claims arose after the county administrator issued a standing order prohibiting the plaintiff from accessing his VAC office in the Madison County Administration Building. Count II was dismissed on the pleadings, and the plaintiff voluntarily dismissed count I after the ban was lifted. The only matter remaining before the trial court was a single count seeking a writ of *mandamus* to compel the defendants to pay the plaintiff's legal fees out of VAC funds. The plaintiff did not file a count for an accounting of the unreserved fund in his state court complaint. The claim for an accounting and the issue of claim splitting were not at issue before the trial court in the case at bar. Those matters were before the federal court. We note that during the pendency of this appeal, the federal court denied the defendants' motion to dismiss the plaintiff's federal claims and his accounting claim. See *Lavite v. Dunstan*, No. 16-cv-00882-DRH-RJD, 2018 WL 1535491 (S.D. Ill. Mar. 29, 2018).

16

¶ 41    This appeal was filed pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Under Rule 301, a final and appealable judgment is one which fixes the rights of the parties absolutely and finally in the litigation on the merits so that if the judgment is affirmed, the only thing left to do is to proceed with the execution of the judgment. See Ill. S. Ct. R. 301 (Feb. 1, 1994). According to the record, the trial court entered a summary judgment for the plaintiff on count III, the only count remaining in the plaintiff's complaint. The plaintiff did not file, or attempt to file, a count seeking an accounting in the case at bar. The trial court did not expressly reserve an accounting issue for future decision in the order entered on March 13, 2017, or the supplemental judgment entered on March 24, 2017. After reviewing the record, we find that the trial court's orders of March 13, 2017, and March 24, 2017, disposed of all claims and issues presented by the plaintiff's complaint, and that we have jurisdiction of the appeal. Accordingly, the plaintiff's motion to dismiss the appeal for lack of jurisdiction is denied.

¶ 42                              B. Applicable Standard of Review

¶ 43    On appeal, the Board contends the trial court erred in granting the plaintiff's motion for judgment on count III of the plaintiff's complaint. The Board argues that the plaintiff failed to satisfy all procedural and legal requirements for *mandamus* relief, and that the trial court relied on unauthenticated and erroneous evidence in reaching its decision.

¶ 44    At the outset, we note that the Board has characterized the trial court's order as a judgment on the pleadings, rather than a summary judgment. A motion for judgment on the pleadings is similar to a motion for summary judgment, but limited to the pleadings. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138 (1999). Judgment on the pleadings is properly granted if the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Employers Insurance of*

17

*Wausau*, 186 Ill. 2d at 138. In considering a motion for judgment on the pleadings, a court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). In contrast, summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in a light most favorable to the nonmoving party, reveal there is no issue as to any material fact and the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016).

¶ 45　　In this case, the record shows that the plaintiff filed a motion for judgment on count III of his complaint pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005(a) (West 2016)). Section 2-1005(a) provides that any time after the opposing party has appeared, a plaintiff may move with or without supporting affidavits for a summary judgment for all or any part of the relief sought. 735 ILCS 5/2-1005(a) (West 2016). The record also shows that the trial court considered the pleadings, affidavits, judicially-noticed facts, and admissions before entering judgment in favor of the plaintiff. Thus, we will review the court's ruling as a summary judgment. An order granting summary judgment is subject to *de novo* review. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 46　　　　　　　　　　C. *Lavite I*—A Primer

¶ 47　　Before considering the propriety of summary judgment, we find it necessary to address the parties' differing interpretations of our opinion in *Lavite I*. After reviewing the record and the briefs, it is apparent that the plaintiff has attempted to stretch the decision and mandate in *Lavite I*, while the Board has attempted to contract it. The parsing of the opinion was a disservice to the trial court, and frankly, has not served either side well. So, to be clear, in *Lavite I*, we found that the trial court erred in dismissing count I and count III of the plaintiff's complaint. We

18

vacated those orders and remanded the case to the trial court with instructions to deny the defendants' motions to dismiss counts I and III. Specifically as to count III, which remains at issue, we determined that county officials did not have the authority to subject the VAC to the county's ordinances addressing competitive purchases and/or expenditures in excess of $5000 when they processed the VAC's warrants to pay the plaintiff's attorney fees from funds that had already been appropriated for VAC expenses in that fiscal year. In the opinion, we noted that the defendants conceded that the plaintiff's attorney fees must be paid from funds that had been appropriated to the VAC, so long as the VAC has the necessary funding.

¶ 48                          D. Post-*Lavite I*—New Controversies

¶ 49    Subsequent to our decision in *Lavite I*, a new controversy arose because the plaintiff's attorney fees and costs had increased from $19,512 to $60,365, and the VAC did not have the "necessary funding" in its 2016 Administrative Fund to pay the plaintiff's attorney fees and meet its payroll for the remainder of the fiscal year. Consequently, the trial court was asked to consider facts and legal issues that had not been considered in *Lavite I*. First, upon the exhaustion of the monies specifically appropriated for the 2016 Administrative Fund, did the VAC have the authority to compel payment of the plaintiff's attorney fees or other expenses incurred in 2016, from either the balance in the 2016 Direct Aid Fund or the balance in the unreserved fund, without an emergency appropriation by the Board? Then, after the Board approved and appropriated funds to the VAC for fiscal year 2017, did the VAC have the authority to use money in its 2017 Administrative Fund to pay attorney fees and other expenses incurred in fiscal year 2016? Embedded within this larger controversy was the issue of whether the defendants were authorized to withhold payment of VAC warrants because the VAC had submitted invoices containing no description of the legal services provided.

19

¶ 50 In essence, the Madison County Board and the VAC are grappling over the amount of control and oversight the county has over VAC operations and expenditures under the Act (330 ILCS 45/0.01 *et seq.* (West 2016)). This is not the first dispute between a county board and a local veterans assistance commission over the meaning and interpretation of the Act. Litigation has occurred over decades. See *Veterans Assistance Comm'n v. County Board*, 274 Ill. App. 3d 32, 36-37 (1995), and cases cited.

¶ 51 Disagreements between county officials and veterans assistance commissions have also occurred outside the courthouse. A scan of more recent legislative history of the Act reveals that between 1987 and 1991, the Illinois legislature was engaged in discussions and debates about the respective roles of the county boards and the local commissions. See 85th Ill. Gen. Assem., Senate Bill 1456, 1987 Sess.; 85th Ill. Gen. Assem., Senate Proceedings, May 13, 1987, at 108-09; 85th Ill. Gen. Assem., Senate Proceedings, June 28, 1988, at 21-23; 87th Ill. Gen. Assem., House Bill 0002, 1991 Sess.; 87th Ill. Gen. Assem., House Proceedings, July 10, 1991, at 2-4; 87th Ill. Gen. Assem., House Proceedings, Oct. 23, 1991, at 74-75; 87th Ill. Gen. Assem., Senate Proceedings, July 9, 1991, at 9-10. The 1991 amendments to sections 9 and 10 of the Act resulted, in part, from a compromise between representatives of the veterans commissions and county and municipal officials. In the 1991 amendments, the legislature maintained the authority of a county board, upon recommendation of a veterans commission, to approve the commission's annual funding for direct assistance and for administrative salaries and expenses, while providing some autonomy to the commission over its day-to-day operations and its management of the direct assistance and administrative budgets. The legislature also retained the provision stating that the commission superintendent and the chairman of the county board would share general oversight of the distribution of all money and supplies for the benefit of veterans, subject to such

rules, regulations, administrative procedures, or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act. Compare Ill. Rev. Stat. 1991, ch. 23, ¶¶ 3089, 3090, and Ill. Rev. Stat. 1989, ch. 23, ¶¶ 3089, 3090.[1]

¶ 52    Since this legislation was enacted in 1907, its overriding purpose has been to provide monetary assistance to military veterans, their families, and the families of deceased veterans. 330 ILCS 45/2 (West 2016). The Act authorizes the establishment and organization of veterans assistance commissions in counties in Illinois (330 ILCS 45/9 (West 2016)) and vests the executive powers of each commission in an elected superintendent (330 ILCS 45/10 (West

---

[1]The 1989 version of section 9 of the Act provided in part:

"The Commission superintendent and the president or chairman of the county board, or some other county officer appointed by him shall have general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of indigent veterans *** and their families subject to such rules, regulations, administrative procedures or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act. No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, *approved by the superintendent of the commission and the chairman of the county board, or some other county officer designated by him.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 23, ¶ 3089.

Section 9 of the Act, as amended in 1991, provided in part:

"The Commission superintendent and the president or chairman of the county board, or some other county officer appointed by him, shall have general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of military veterans and their families, subject to such rules, regulations, administrative procedures or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act. No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, *approved by the superintendent of the Commission.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 23, ¶ 3089.

Section 10 of the Act in the 1989 version provided in part: "The county board shall also provide funds to the commission to reimburse the superintendent and his employees for certain expenses *which are approved by the county board.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 23, ¶ 3090.

Section 10 of the Act in the 1991 version provided in part: "The county board shall also provide funds to the commission to reimburse the superintendent, officers, delegates and employees for certain expenses *which are approved by the commission.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 23, ¶ 3090.

2016)).

¶ 53    In order to provide necessary assistance to military veterans and their families, the legislature has directed that, upon the recommendation of the VAC, the county board "shall provide such sums of money as may be just and necessary" to assist veterans and their families. 330 ILCS 45/2 (West 2016). Section 2 further provides that if a county board fails to appropriate just and necessary sums for direct assistance, the superintendent of the VAC may seek a writ of *mandamus* to compel the county board to appropriate the necessary funds. 330 ILCS 45/2 (West 2016). Thus, under section 2 of the Act, the VAC submits its recommendation for its direct assistance budget to the county board, and the county board either approves or disapproves the recommendation. If the county board disapproves of the recommendation, the VAC may submit a new recommendation for a different amount or may seek a writ of *mandamus. Veterans Assistance Comm'n*, 274 Ill. App. 3d at 37. A court, however, is not bound to grant all of the relief requested in the petition; it may grant relief so far as a petitioner establishes a right to it. *Veterans Assistance Comm'n*, 274 Ill. App. 3d at 37.

¶ 54    Section 10 of the Act provides that the county board shall appropriate additional sums, upon recommendation of the VAC and as approved by the county board, to properly and justly compensate the officers and employees who administer assistance to veterans under the Act. 330 ILCS 45/10 (West 2016). Section 10 further provides that the county board shall also provide funds to the commission to reimburse the superintendent, officers, delegates, and employees for certain expenses that are approved by the commission. 330 ILCS 45/10 (West 2016). The process for determining the annual budget for the Administrative Fund, including the right to seek *mandamus* relief, is the same as provided in section 2 of the Act. See *Veterans Assistance Comm'n*, 274 Ill. App. 3d at 37. Section 10 also directs that the superintendent and other

22

employees "shall" be employees of the Veterans Assistance Commission, not the county. 330 ILCS 45/10 (West 2016).

¶ 55   As mentioned earlier, section 9 of the Act provides that the superintendent of the VAC and the chairman of the county board

> "shall have general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of military veterans and their families, subject to such rules, regulations, administrative procedures or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act." 330 ILCS 45/9(b) (West 2016).

Section 9 further provides: "No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, approved by the superintendent of the Commission." 330 ILCS 45/9(b) (West 2016).

¶ 56   The VAC's funding for direct assistance and administrative expenses are provided through an annual tax levy. 55 ILCS 5/5-2006 (West 2016). Section 5-2006 of the Counties Code provides that the proceeds of any tax levied for purposes of providing veterans assistance "shall be used exclusively for the assistance purposes authorized," and "a portion thereof may be expended for the salaries or expenses of any officers or employees of the Veterans Assistance Commission or for any other expenses incident to the administration of such assistance." 55 ILCS 5/5-2006 (West 2016). Section 5-2006 further provides that when the tax is collected it shall be paid into a "special fund in the county treasury and used only as herein authorized." 55 ILCS 5/5-2006 (West 2016).

¶ 57                    E. The Propriety of Summary Judgment

¶ 58   Having reviewed the applicable provisions in the Act, we now turn to issues presented in

23

this case, noting that the pertinent facts are largely undisputed. Upon the recommendation of the VAC, the Board appropriated $152,800 for the VAC's Direct Aid Fund and $364,424 for the VAC's Administrative Fund for fiscal year 2016. On August 25, 2016, plaintiff's counsel delivered Warrant No. 16-4, which was executed by the plaintiff, as superintendent of the VAC, along with a redacted invoice indicating that his firm was owed $60,365.92 for legal services provided to the plaintiff. As of that date, the VAC had sufficient funds in its 2016 Administrative Fund to pay the attorney fees. The defendants, however, declined to pay the attorney fees invoice because of concerns that the VAC could not pay the attorney fees and meet its payroll for the final two months of fiscal year 2016. The defendants also indicated that they were not inclined to pay because it was not the policy of the auditor's office to process invoices in which the professional services were not disclosed. Additionally, at least one of the defendants was concerned that the sum of counsel's invoices for 2016, if paid in full, would consume more than 35% of the 2016 Administrative Fund. As of the November 18, 2016, hearing on the show-cause order, the undisputed evidence showed that the VAC had $14,548.88 remaining in its 2016 Administrative Fund and $53,683 remaining in its 2016 Direct Aid Fund. At some point prior to or during the hearing, the defendants tendered a check in the sum of $14,548.88 to plaintiff's counsel in partial payment of his attorney fees. Upon tender of the check, there was no money in Administrative Fund, and the balance owed to plaintiff's counsel was $45,817.04.

¶ 59    When Warrant No. 16-4 was originally presented on August 25, 2016, the VAC had sufficient funds in the 2016 Administrative Fund to pay the attorney fees. As noted, the defendants declined to pay Warrant 16-4 because of concerns that the VAC did not have sufficient funds to pay the attorney fees and meet its payroll for the final two months of the fiscal year. This decision, however, was not the defendants' decision to make. Section 10 provides that

24

the county board shall provide sums to the VAC for expenses *as approved by the VAC*. 330 ILCS 45/10 (West 2016). Thus, the VAC has authority over its personnel and its operational expenses. See *Veterans Assistance Comm'n*, 274 Ill. App. 3d at 36-37. The VAC may retain attorneys or other professionals to provide professional services. These professionals are agents of the VAC, not the county. See *Veterans Assistance Comm'n v. County Board*, 2016 IL App (3d) 130969, ¶¶ 61-62; *Veterans Assistance Comm'n*, 274 Ill. App. 3d at 36-37. In addition, section 9(b) vests the superintendent of the VAC, not the Board, with authority to review and approve itemized invoices. 330 ILCS 45/9(b) (West 2016). While section 9(b) also provides that the VAC and the Board have shared general oversight of the distribution of all moneys and supplies, we do not believe the shared-oversight provision empowers the defendants to unilaterally refuse payment of a properly executed warrant for professional services, such as attorney fees, simply because they disagree with the VAC's decision on that particular expense.

¶ 60    In this case, the undisputed facts show that the plaintiff, in his capacity as VAC superintendent, reviewed and approved his attorney's unredacted itemized invoice and that when the plaintiff presented Warrant No. 16-4 demanding payment of the invoice, there were sufficient funds in the 2016 Administrative Fund to pay those expenses. Thus, Warrant No. 16-4 should have been processed and paid from the 2016 Administrative Fund, shortly after it was submitted. If the VAC experienced a subsequent administrative budget overage, as the defendants feared, the VAC could have requested a supplemental appropriation from the Board, mindful that such an appropriation was within the discretion of the Board.

¶ 61    The defendants also indicated that they were not inclined to pay the attorney fees because the description of professional services was completely redacted on the invoice. The defendants asserted that it was not the policy of the auditor's office to remit payment for undisclosed

25

services and pointed to the "rules and regulations" provision in section 9 of the Act in support of their position.

¶ 62    Section 9(b) provides that the superintendent and the Board have shared general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of military veterans and their families, "subject to such rules, regulations, administrative procedures or audit reviews as are necessary as approved by the county board to carry out the spirit and intent of this Act." 330 ILCS 45/9(b) (West 2016). Section 9(b) further provides: "No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, approved by the superintendent of the Commission." 330 ILCS 45/9(b) (West 2016). In construing these provisions, we are guided by familiar principles of statutory construction, which state that a court will construe each material part of a statute together, not in isolation, and will presume that the legislature drafted a statute so that each part would be in harmony with its purpose and intent. See generally *Brucker v. Mercola*, 227 Ill. 2d 502, 513-14 (2007). Thus, the approval of itemized statements lies with the superintendent of the VAC, and under the shared general oversight provision in section 9(b), the Board may approve rules and procedures for the distribution of money and supplies that are necessary to carry out the spirit of the Act.

¶ 63    In this case, the defendants made general assertions in pleadings and affidavits that the county had a uniform policy requiring itemized invoices for all warrants, but they produced no such policy, and they offered no documents, testimony, or other evidence establishing the specific contents of this policy or the necessary requirements for processing invoices. Additionally, when faced with a rule to show cause order, the defendants tendered a check in the sum of $14,548.88 to plaintiff's counsel, without requiring counsel to provide an unredacted

26

invoice. It is important to recognize the procedural posture of this case. The defendants were faced with plaintiff's motion for summary judgment. A motion for summary judgment requires the responding party to come forward with the evidence it has to oppose the motion. We respectfully borrow a phrase from the United States Court of Appeals for the Seventh Circuit— summary judgment is the "put up or shut up" moment in a lawsuit. (Internal quotation marks omitted.) See *Eberts v. Goderstad*, 569 F.3d 757, 766-67 (7th Cir. 2009). Here, the defendants made references to policies and accounting practices, but presented no evidence of them.

¶ 64    *Mandamus* is an extraordinary remedy that will be granted only if the plaintiff can establish a clear right to the requested relief, a clear duty to act on the defendant's part, and clear authority in the defendant to comply with the writ. *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997). Based on the record before us, we find that the plaintiff established that the VAC had a right to have the balance due under Warrant No. 16-4 paid from the 2016 Administrative Fund, as there were sufficient funds in the 2016 Administrative Fund to pay the warrant at the time it was presented and the defendants had a duty to pay it. According to the record, upon presentation of Warrant No. 16-4, plaintiff's counsel was owed $60,365.92, and the defendants tendered a check in sum of $14,548.88. This left a balance due of $45,817.04, and the defendants are ordered to pay that sum, plus the interest due under 50 ILCS 430/3 (West 2016). We pause briefly to acknowledge that there are fair questions about whether the VAC's demand for payment of this expense was shortsighted or lacked discernment. With autonomy comes the freedom to make wise and unwise decisions. The decisions and performance of the elected superintendent and VAC Executive Committee will ultimately be graded by those they serve.

¶ 65    The plaintiff, however, has not established a clear right to payment of Warrant No. 16-5.

27

At the time the plaintiff presented Warrant No. 16-5, fiscal year 2016 had closed, and the VAC had exhausted its 2016 Administrative Fund. Based on our reading of the Act, the VAC did not have the authority to transfer monies specifically appropriated and approved for its Direct Aid Fund to the Administrative Fund to cover Warrant No. 16-5. The Act provides for annual funding for two distinct purposes. Section 2 of the Act very clearly directs the Board, upon the recommendation of the VAC, to approve and appropriate "just and necessary" funds for direct assistance to veterans. 330 ILCS 45/2 (West 2016). Section 10 directs the Board, upon the recommendation of the VAC, to approve and appropriate funds for proper and just compensation, and for expenses approved by the VAC. 330 ILCS 45/10 (West 2016). In addition, we do not find that the VAC has authority to pay expenses incurred in a prior fiscal year, from funds appropriated for the subsequent year. Section 5-2006 of the Counties Code provides for an annual tax for the assistance of military veterans and their families. 55 ILCS 5/5-2006 (West 2016). The VAC makes annual recommendations for direct assistance funds and for administrative expense funds, and taxes are levied following the Board's approval of the recommendations. The use of administrative funds appropriated in 2017 to pay expenses incurred in a prior fiscal year could impede the VAC's operation abilities to provide needed assistance to military veterans during 2017.

¶ 66    The VAC also argues that it could have drawn money from its unreserved fund to pay Warrant 16-5. As noted, the unreserved fund contains proceeds from property taxes specifically levied for the VAC. See 55 ILCS 5/5-2006 (West 2016). The unreserved fund contains several hundred thousand dollars that had either been appropriated to the VAC, but went unspent during the year appropriated, or taxes that were collected, but exceeded the amount requested by and appropriated to the VAC in prior years. The accrued tax dollars in the unreserved fund must be

used exclusively for the veterans assistance purposes authorized under the Act. 55 ILCS 5/5-2006 (West 2016). However, we do not agree that the VAC has the unilateral authority to withdraw money from the unreserved fund to cover its budget overages. Again, under the Act, funds are appropriated annually for direct assistance and administrative expenses, upon the recommendation of the VAC, and approval by the Board. Based on the record, it appears that budget overages are accommodated through supplemental emergency appropriations, as approved by the Board, and that such appropriations would be drawn from the unreserved fund.

¶ 67    In summary, the plaintiff has established that he is entitled to a writ of *mandamus*, directing the defendants to pay the balance of $45,817.04, due under Warrant No. 16-4, together with accrued interest under section 3 (50 ILCS 430/3 (West 2016)), to plaintiff's counsel. The defendants are ordered to pay that sum from the unreserved fund account. The plaintiff has failed to demonstrate a clear right to a writ of *mandamus* directing the defendants to pay Warrant No. 16-5, and the circuit court erred in directing the defendants to pay that warrant. Nothing within this disposition would prevent the plaintiff from making a request for a special appropriation to pay Warrant 16-5. However, the approval of such a request is within the discretion of the Board.

¶ 68                           F. The Board's Other Claims of Error

¶ 69    The Board also contends that the trial court erred in taking judicial notice of two reports, entitled "Madison County IL FY 2016 Budget Expenditure Analysis," and the plaintiff's affidavit, which were offered in support of the plaintiff's motion for summary judgment. Initially, we note that the trial court did not take notice of the entire content of these documents. In regard to the "Madison County IL FY 2016 Budget Expenditure Analysis," the trial court took notice of the specific dollar amounts appropriated by the Board in 2017 for the VAC's Administrative Fund and Direct Aid Fund. These facts were part of the Board's record, were

uncontroverted, and were utilized by both parties. Judicial notice is proper where the document in question is part of the public record. *Finish Line Express, Inc. v. City of Chicago*, 72 Ill. 2d 131 (1978). Judicial notice may also be taken of factual evidence where the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 166 (1983). Thus, the trial court did not err in taking judicial notice of the amounts appropriated for the VAC's budget in 2017.

¶ 70    The Board also contends that the trial court erred in taking judicial notice of the sworn affidavit of the plaintiff. Initially, we note that a trial court is permitted to consider the affidavits on file when ruling on a motion for summary judgment. 735 ILCS 5/2-1005(c) (West 2016). In this case, the record demonstrates that the trial court did not take notice of the entire content of the plaintiff's affidavit. The court limited its consideration to the statements indicating that the plaintiff had reviewed and approved of his attorney's invoice and that he executed Warrant No. 16-5 and delivered it to the treasurer's office. The defendants had the opportunity to rebut these facts, but they presented no evidence to refute them. Thus, the Board has not demonstrated prejudice as a result of any alleged error. See *Vulcan Materials Co.*, 96 Ill. 2d at 166.

¶ 71    The Board next contends that the trial court erred in denying the defendants' motion to disqualify and sanction the VAC's attorney for conflicts of interest. The record shows that the plaintiff also filed a motion to appoint a special prosecutor, based on alleged conflicts of interest. After considering the defendant's motion to disqualify the VAC's attorney and the plaintiff's motion to appoint a special prosecutor, and after a conversation in chambers with counsel, the court denied the respective motions. The determination of whether to disqualify an attorney and to impose sanctions generally rests within the sound discretion of the trial court, and its

30

determination will not be disturbed on review absent an abuse of discretion. See generally *Schwartz v. Cortelloni*, 177 Ill. 2d 166 (1997). Given the record before us, we cannot say that the court's decision to deny the respective motions was an abuse of discretion.

¶ 72                                   III. Plaintiff's Cross‑Appeal

¶ 73    On cross-appeal, the plaintiff contends that the trial court erred in denying the plaintiff's request that the trial court extend its *mandamus* order to compel the defendants to pay all future warrants submitted by the VAC for administrative expenses. The trial court declined to issue a writ of *mandamus* regarding events and conduct that had not yet occurred. *Mandamus* is inappropriate unless the moving party can demonstrate a clear, affirmative right to relief, a clear duty on the defendant to act, and clear authority in the defendant to comply with the writ. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). The plaintiff's request for *mandamus* relief involved a potential future event, and the facts and duties were neither clear nor certain. The trial court did not err in denying the plaintiff's request to compel the defendant to pay all future warrants.

¶ 74    The plaintiff also contends that the trial court erred in granting the defendants' motion to stay the enforcement of judgment and to waive bond. The plaintiff contends that the defendant should have been required to post a bond in connection with the March 24, 2017, judgment. Under Illinois Supreme Court Rule 305(i) (eff. July 1, 2004), "[i]f an appeal is prosecuted by a public, municipal, governmental, or quasi-municipal corporation, or by a public officer in that person's official capacity for the benefit of the public, the circuit court, or the reviewing court or a judge thereof, may stay the judgment pending appeal without requiring that any bond or other form of security be given." The trial court's power to grant a stay without requiring bond is discretionary. See Ill. S. Ct. R. 305(i) (eff. July 1, 2004). The plaintiff failed to establish that the trial court abused its discretion in staying the enforcement of the judgment and waiving bond.

31

¶ 75    The plaintiff has raised numerous other issues in this cross-appeal, including a contention that the trial court erred in refusing to issue a show cause order against the Madison County Treasurer for failing to immediately pay Warrant No. 16-5 in accordance with the trial court's final order of March 24, 2017. We have considered each of these contentions, but find that it would be purposeless to prolong this opinion with a detailed discussion as the plaintiff has not established reversible error. At this point, we believe it necessary to remind the litigants that the objective of appellate review is not to determine whether the record is totally free of error, but rather, to determine whether any error occurred that substantially prejudiced a party and affected the outcome. *Needy v. Sparks*, 51 Ill. App. 3d 350, 372 (1977).

¶ 76                                    IV. CONCLUSION

¶ 77    After reviewing the record, we find that the plaintiff has established that he is entitled to a writ of *mandamus*, directing the defendants to pay the balance of $45,817.04 due under Warrant No. 16-4. The defendants are ordered to pay the sum of $45,817.04, plus accrued interest under section 3 (50 ILCS 430/3 (West 2016)), to plaintiff's counsel, from funds in the VAC unreserved fund account, and payment should be made within 30 days after the mandate issues. We further find that the circuit court erred in directing the Board to pay Warrant No. 16-5, as the plaintiff failed to demonstrate a clear right to an order directing payment of that warrant. Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.

¶ 78    Affirmed in part and reversed in part.

2019 IL App (5th) 170114
NO. 5-17-0114
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| BRADLEY A. LAVITE, Superintendent of the Veterans Assistance Commission of Madison County, Illinois, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) | No. 15-MR-145 |
| ALAN J. DUNSTAN, Chairman of the Madison County Board; JOSEPH D. PARENTE, County Administrator of Madison County, Illinois; THE MADISON COUNTY BOARD; and JOHN D. LAKIN, Sheriff of Madison County, Illinois, | ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (The Madison County Board, Defendant-Appellant and Cross-Appellee). | ) ) ) ) | Honorable William J. Becker, Judge, presiding. |

_____

**Opinion Filed:**          January 2, 2019
_____

**Justices:**          Honorable Judy L. Cates, J.

Honorable Richard P. Goldenhersh, J., and
Honorable Melissa A. Chapman, J.
Concur
_____

**Attorneys for Appellant**          Philip J. Lading, Sandberg Phoenix & Von Gontard P.C., 101 W. Vandalia Street, Suite 300, Edwardsville, IL 62025; Timothy C. Sansone, Sandberg Phoenix & Von Gontard, P.C., 600 Washington, 15th Floor, St. Louis, MO 63101
_____

**Attorneys for Appellee**          Thomas W. Burkart, Karen D. Burkart, Burkart Law Office, 130 W. State Street, P.O. Box 447, Hamel, IL 62046
_____